Marian STEVENS, Respondent,

v.

COMPUTER METAL PRODUCTS,
INC., et al., Relators.

No. 81–251.

Supreme Court of Minnesota.

Nov. 25, 1981.

Faegre & Benson, James A. O'Neal and
Gerard M. Nolting, Minneapolis, for rela-
tors.

Albrecht & Albrecht and Alan Albrecht,
Wayzata, for respondent.

WAHL, Justice.

Certiorari on the relation of the employer and its compensation insurer to review a decision of the Workers' Compensation Court of Appeals awarding employee compensation for permanent total disability. At issue is the sufficiency of the evidence to support the underlying finding that employee's condition is one of permanent total disability and the further crucial finding that a work-related neck injury she sustained on December 11, 1969, is a substantial contributing factor in her disability. After review of the record we affirm the first finding but reverse the second and remand to afford the parties opportunity to furnish medical opinions addressed directly to it.

The background of the present proceeding is rather involved. Employee sustained an employment related injury on December 11, 1969, in the course of her work as a painter's assistant, when she lifted an 80-pound metal frame. She was paid compensation for 22⅕ weeks of total disability. She did not return to work, and in June 1972 she filed a claim petition seeking compensation for additional temporary total disability and alleging injury to "shoulder area, neck, back, arms and hand." Based on her own testimony that this injury caused muscle spasms in her neck, headaches and pain radiating into her ear and shoulder, and on the diagnosis of Dr. Leonard Titrud, a neurologist whom she consulted, the compensation judge determined that employee had sustained a "right side neck strain or sprain with cervical radiculitis" and had been temporarily totally disabled until May 11, 1970, the date on which the orthopedic surgeon she consulted, Dr. Bruce Sundberg, told her she could return to work. On appeal the Workmen's Compensation Commission decided on May 7, 1973, that she had been temporarily totally disabled until September 29, 1970, the date on which Dr. Titrud had recommended that she attempt to do light work, and temporarily partially disabled thereafter. No appeal was taken from this decision.

In July 1974 employee filed a petition claiming temporary total disability from November 9, 1972. The case was stricken after the employer-insurer raised the defense that the claim was barred by the May 1973 decision. Employee did not then petition to vacate the prior decision. She commenced the present proceeding in January 1979, again claiming injury to "shoulder area, neck, back, arms and hand" and seeking compensation for permanent total disability from December 5, 1976.

At a hearing in November 1979 employee sought to establish that her disability was the consequence of the 1969 injury. She testified that she had first noticed twinges of pain in her low back a few weeks after the 1969 injury, a condition which had worsened steadily and ultimately had caused severe pain radiating into both legs. In the fall of 1975 Dr. Titrud performed a laminectomy and removed a herniated lumbar disc, but the procedure relieved the severity of employee's pain only slightly. She continued to have considerable difficulty and said that her back has "locked" many times. She testified also that by June 1973 her neck pain and headaches were "minor problems," although she still had weakness and pain in her right arm. She conceded at the 1979 hearing that her neck and arm condition generally had improved and that her pain was less frequent and less intense, although "I still have a lot of it." She said also that she does only light housework and rests several times a day. Aside from applying for 7 or 8 light assembly jobs without success in 1978 and the winter of 1979, employee has not attempted to return to work. In September 1979 the insurer arranged for her to take work evaluation tests during which she said she experienced increasing spasms in her back and legs. In performing tests requiring use of her arms and hands, she also had difficulty with her right arm and hand and "got terrible sharp pains in all four of my fingers up to the muscles."

Dr. Titrud testified that employee has a 40% permanent partial disability of the back attributable equally to her neck injury and her low back condition. He expressed

the opinion that both disabilities are causally related to the 1969 injury on the assumption that employee had complained of her low back pain as well as neck pain to her family doctor, Dr. Freeman Kovack, following the 1969 injury. The first entry in Dr. Kovack's records concerning low back pain, however, was made in March 1972. Dr. Kovack expressed a similar opinion concerning causal relationship on the assumption—not supported by the record—that employee had complained about low back trouble to Dr. Sundberg and Dr. Titrud. The compensation judge, with whom the Court of Appeals agreed, found that employee had not sustained her burden of proving that the low back condition was caused by her 1969 injury. In spite of employee's claim to the contrary, the record as a whole clearly supports that determination.

We have concluded also that the record supports the finding that employee is permanently totally disabled. Dr. Titrud and Dr. Kovack expressed the opinion that she is disabled from competitive employment and that her condition will not improve. Dr. Kovack also testified that she could not lift more than 5 to 10 pounds, could not bend, and could not use her arms or stand for prolonged periods. Dr. Paul Yellin, an orthopedic surgeon who examined employee for relators on October 9, 1979, imposed the same restrictions and added that employee preferably should have a desk job at which she could alternately sit and stand, but "should not * * * keep her head flexed for long periods of time due to recurrent pain in her neck."

Two vocational counselors expressed conflicting opinions on whether employee is now employable. Phillip Haber, a vocational psychologist, expressed the opinion that employee is employable and listed several jobs he thought she could do—coupon sorter, cashier, ticket taker, cutting machine operator, hand packager, and microwave emission tester. He recommended that she participate in a pain rehabilitation program, although he admitted that the program would not insure her return to employment, and suggested also that she should be furnished job placement assistance.

Robert Flanary, an older-worker employment specialist for the Department of Employment Security, knew of no work a person with employee's physical limitations could do. He did not know what was involved in testing microwave emissions, but thought that employee could not satisfactorily work on a sustained basis at any other positions suggested by Haber because they required prolonged sitting or standing and in some instances required her to lean forward with her head down and to use her arms.

As stated, relators challenge the sufficiency of this evidence to establish either that employee has sustained permanent total disability or that her 1969 injury is now a substantial contributing factor in her disability. We have consistently interpreted Minn.Stat. § 176.101, subd. 5 (1980), defining total disability to include any "injury which totally incapacitates the employee from working at an occupation which brings him an income," to mean that an employee is totally disabled when his physical condition, in combination with his training and experience, and the type of work available in his community, causes him to be unable to secure anything but sporadic employment resulting in an insignificant income. *Henry v. Sears, Roebuck & Co.,* 286 N.W.2d 720 (Minn.1979). Employee's testimony, the medical opinions, and Mr. Flanary's opinion furnish substantial evidence to support the finding that employee is permanently totally disabled within the meaning of that interpretation.

Relators contend, however, that her disability cannot be found permanent because the majority of the Court of Appeals recommended that, as Mr. Haber had urged, employee participate in a pain rehabilitation program and that she also receive job placement assistance. In our view these recommendations do not invalidate the finding that employee now is permanently totally disabled. Since her impaired bodily condition is static and the duration of her disability is indefinite, the finding of permanent total disability is appropriate. *See*

*Schriner v. Riverside Companies, Inc.*, 378 So.2d 1035 (La.App.1979); *Lane v. Levi Strauss & Co.*, 92 N.M. 504, 590 P.2d 652 (1979). *See also Petter v. K. W. McKee, Inc.*, 270 Minn. 362, 133 N.W.2d 638 (1965). While it seems likely that the recommendation that employee be furnished job placement assistance was intended to hinge on the degree to which she is benefited by a pain rehabilitation program, our remand for evidence pertaining to the other principal issue in this case will afford the Court of Appeals an opportunity to clarify its recommendations.

The remaining issue is the most troublesome one: Is employee's 1969 neck injury presently a substantial contributing factor in her disability? If it is, she is entitled to compensation. *Schaefer v. Dunwoody Industrial Institute*, 280 N.W.2d 35 (Minn.1979); *Roman v. Minneapolis St. Ry. Co.*, 268 Minn. 367, 129 N.W.2d 550 (1964). While the record might permit us to infer the medical witnesses' recognition that employee's neck injury continues to be a substantial contributing factor in her disability, we have concluded that on so important a question it is preferable to elicit opinions addressed directly to that issue if at all possible. *Cf. Schaefer.* Consequently, we direct that the finding that employee's neck injury has been and continues to be a substantial contributing cause to her disability be reversed and that the parties may furnish further medical testimony addressed directly to that issue.

Affirmed in part, reversed in part and remanded.

Employee is awarded attorneys fees of $200.