Terrance Lee GENIN, Petitioner,
Appellant,

v.

1996 MERCURY MARQUIS, VIN No.
2MEBP95F9CX644211, LICENSE
NO. MN 225 NSG, Respondent.

No. C7–99–1577.

Supreme Court of Minnesota.

Feb. 8, 2001.

Charles A. Ramsay, Rebecca M. Rhoda, Ramsay & Devore, P.A., Roseville, for appellant.

James D. Hoeft, Scott M. Lepak, Barna, Guzy & Steffan, Ltd., Minneapolis, for respondent.

Minnesota Soc. of Crim. Justice, Jeffrey S. Sheridan, Eagan, amicus curiae.

## OPINION

LANCASTER, Justice.

At issue in this case is the question of who must pay storage fees when the police seize and store a vehicle pursuant to a vehicle forfeiture statute, Minn.Stat. § 169.1217 (1998),[1] where the vehicle is ultimately returned to the owner after a judicial forfeiture determination. The court of appeals held that the vehicle owner is responsible for the accumulated storage fees. We reverse.

Terrance Lee Genin was arrested for driving while intoxicated on August 22, 1998, in the city of Centerville. He was charged with three gross misdemeanor alcohol-related driving offenses: Count I was "Driving with an Alcohol Concentration of Over .20, 2nd in Five Years," which carried a two-year maximum sentence and was an "enhanced" gross misdemeanor;[2] Count II was "DWI, 2nd in Five Years," which carried a maximum penalty of one year in jail; and Count III was "Driving with an Alcohol Concentration of Over .10, 2nd in Five Years," which carried a one-year maximum penalty.

---

**1.** Minnesota Statutes § 169.1217 (1998) has been repealed. Act of May 15, 2000, ch. 478, art. 2, § 8, 2000 Minn. Laws 1537, *recodified and amended at* Minn.Stat. § 169A.63 (2000).

**2.** In 1997 the legislature created a category of crimes called enhanced gross misdemeanors. After Genin's arrest, this court ruled that such enhanced gross misdemeanors are unconstitutional because they allowed for convictions carrying a two-year sentence without providing access to a twelve-person jury, a constitutional right in Minnesota. *See Baker v. State,* 590 N.W.2d 636, 639–40 (Minn.1999).

The forfeiture statute pursuant to which the police seized Genin's vehicle permits forfeiture only for certain designated offenses. Minn.Stat. § 169.1217, subds. 6–7 (1998); *see* Minn.Stat. § 169.1217, subd. 1(c) (1998) (listing the violations that constitute designated offenses). Genin's vehicle was seized because Count I charged an enhanced gross misdemeanor that was a designated offense.

The police seized Genin's vehicle pursuant to an administrative forfeiture provision of the forfeiture statute. The police provided Genin notice of his right to file a demand for a judicial forfeiture determination and Genin filed the demand.

On January 27, 1999, Genin received his judicial forfeiture determination. The district court dismissed the forfeiture complaint without prejudice because, at that point, there had been no judicial determination as to license revocation or the criminal charges against Genin. The court therefore ordered that Genin's vehicle be returned to him. The record does not indicate whether Genin attempted to retrieve his vehicle at that point, but the record is clear that in fact the vehicle remained in storage.

On March 15, 1999, Genin pled guilty to Driving With an Alcohol Concentration of Over .10, Second in Five Years, an offense not designated under the forfeiture statute, and the state dismissed the remainder of the charges against him. On March 24, 1999, the City of Centerville, notwithstanding the fact that the only count charging an offense designated under the forfeiture statute had been dismissed, filed a forfeiture complaint against Genin pursuant to Minn.Stat. § 169.1217, subd. 8 (1998), which provides for a judicial forfeiture procedure.

As a consequence of the city's filing a forfeiture complaint against Genin, he received another judicial forfeiture determination. On July 14, 1999, because Genin was not convicted of a designated offense, the district court dismissed the city's forfeiture complaint and ordered that Genin's vehicle be returned to him. The court order did not mention storage fees. Genin attempted to retrieve his vehicle and was informed by the storage facility that until he paid $5,500 in accumulated storage fees, he could not have the vehicle. Genin, who asserts that the fees total more than the value of his vehicle, did not pay the fees or retrieve the vehicle.

On August 12, 1999, Genin appeared before the district court requesting that the city be held responsible for the storage fees. He raised three arguments in support of his request. First, Genin argued that pursuant to Minn.Stat. § 169.1217, subd. 3 (1998), the city had "[a]ll right, title, and interest" in the vehicle from the moment of seizure and, as result, the city was responsible for the fees. Second, he argued that to hold him responsible for storage fees that total more than the value of his vehicle leads to an absurd result, and when interpreting statutes courts must presume the legislature did not intend an absurd result. Third, Genin asserted that the legislature intended, as evidenced by section 169.1217, subd. 7a(g) (1998), to "make a party whole after they prevail in a forfeiture action."

The district court held that, under section 169.1217, Genin was responsible for the storage fees. The court of appeals affirmed the district court's decision and agreed with the district court's analysis in all respects. *Genin v.1996 Mercury Marquis, VIN # 2MEBP95F9CX644211, License No. MN 225 NSG*, 609 N.W.2d 266, 267, 269–70 (Minn.App.2000). Genin then appealed to this court.

The question presented by this appeal, who is responsible for storage fees under Minn.Stat. § 169.1217 when the district court dismisses a forfeiture complaint and orders a vehicle to be returned to its owner, is one of statutory construction. Our review, therefore, is de novo. *State v. Loge*, 608 N.W.2d 152, 155 (Minn.2000). The goal of statutory construction is to ascertain and effectuate the legislature's

intent. *Id.* The rules of construction forbid adding words or meaning to a statute that were intentionally or inadvertently left out. *Phelps v. Commonwealth Land Title Ins. Co.,* 537 N.W.2d 271, 274 (Minn. 1995). When a question of statutory construction involves a failure of expression rather than an ambiguity of expression, "courts are not free to substitute amendment for construction and thereby supply the omissions of the legislature." *State v. Moseng,* 254 Minn. 263, 269, 95 N.W.2d 6, 11–12 (1959).

■ We begin our analysis by reviewing the content and framework of Minn.Stat. § 169.1217. Under that statute, a motor vehicle is subject to forfeiture if it is used in the commission of certain designated offenses, or is used in conduct resulting in a designated license revocation. Minn. Stat. § 169.1217, subd. 6.[3] The police may seize a vehicle incident to lawful arrest for such an offense. *Id.* subd. 2(1) (1998).[4] "[U]pon commission of the conduct resulting in the designated offense or designated license revocation," the appropriate municipality or arresting agency immediately obtains "[a]ll right, title, and interest in a vehicle subject to forfeiture." *Id.* subd. 3.

Minnesota Statutes § 169.1217, subd. 7a (1998), pursuant to which Genin's vehicle was initially seized, provides a procedure for administrative forfeiture. Under that subdivision, police may seize a vehicle immediately upon arrest for a designated offense and must then provide the vehicle owner with a detailed notice explaining that they intend to seek forfeiture of the vehicle. *Id.* subds. 7a(b)–(c) (1998); *see id.*

subd. 2 (1998). The owner may file a demand for a judicial forfeiture determination within 30 days following service of the forfeiture notice. *Id.* subd. 7a(d) (1998). The statute also contains a provision permitting a judicial forfeiture procedure. *Id.* subd. 8. In that case, a separate complaint must be filed against the vehicle. *Id.* subd. 8(b) (1998).

A vehicle owner may seek possession of the vehicle before the forfeiture proceeding by giving security or posting a bond payable to the appropriate agency.[5] *Id.* subd. 4 (1998). If returned before the forfeiture proceeding, the vehicle is to be equipped with a disabling device. *Id.* In order to regain possession of the vehicle, the owner must put up security or post a bond equal to the retail value of the vehicle. *Id.* However, the appropriate agency has discretion to return or withhold vehicle. *Id.* The statute provides no guidance to the agency about when to exercise its discretion to return the vehicle. *Id.* Similarly, if the agency retains the vehicle, it has unrestricted discretion about where to store the vehicle. *See id.* subds. 3 and 3(2) (1998) ("When a vehicle is so seized, the appropriate agency may * * * remove the vehicle to a place designated by it * * *.").

If, during a forfeiture proceeding, the district court determines that forfeiture is not permitted, the statute requires that the court order the vehicle returned to its owner. *See id.* subds. 7a(g) and 8(b). The statute is silent as to who bears responsibility for any accrued storage fees when the owner prevails at a forfeiture proceed-

---

**3.** Minnesota Statutes § 169.1217, subd. 6 states: "A motor vehicle is subject to forfeiture under this section if it was used in the commission of a designated offense or was used in conduct resulting in a designated license revocation."

**4.** Minnesota Statutes § 169.1217, subds. 2 and 2(1) (1998) state: "A motor vehicle subject to forfeiture under this section may be seized by the appropriate agency upon process issued by any court having jurisdiction over the vehicle. Property may be seized

without process if * * * the seizure is incident to a lawful arrest or a lawful search."

**5.** Section 169.1217, subd. 1(e) (1998) explains that the statute uses the term "owner" to refer to the registered owner of the motor vehicle according to the records of the Department of Public Safety; it uses the term "appropriate agency" to refer to a law enforcement agency. *Id.* subd. 1(a) (1998). For ease of reference, we will use the term "owner" to designate the registered vehicle owner from whom the vehicle has been seized.

ing. The statute does, however, address payment of storage fees when the owner does not prevail and the vehicle is sold.[6] The proceeds of a forfeiture sale must go to, among other things, payment of storage expenses. *Id.* subd. 9 (1998).

■ In contrast to section 169.1217, another DWI-related statute does address the responsibility for storage fees. Under Minn.Stat. § 169.1216 (1998), the police may impound a vehicle that they have seized following the arrest of a driver for driving under the influence of alcohol or some other designated substance. When a vehicle is impounded pursuant to section 169.1216, no "law enforcement agency, local unit of government, or state agency is responsible or financially liable for any storage fees incurred." *Id.* § 169.1216, subd. 4 (1998). In Genin's case, the police seized his vehicle pursuant to section 169.1217, the forfeiture statute, and section 169.1216 was never triggered.

■ The legislature enacted Minn. Stat. § 169.1216 at the same time that it enacted section 169.1217, and both provisions derived from the same bill. *See* Act of Apr. 29, 1992, ch. 570, §§ 14 and 15, 1992 Minn. Laws 1944, 1952. That section 169.1216 contains this storage fee provision demonstrates that the legislature contemplated the issue of storage fees when it drafted these two statutes, but affirmatively chose not to include a parallel provision in section 169.1217. This indicates that in section 169.1217 the legislature did not intend, as it did in section 169.1216, to protect the police or

appropriate municipality from financial responsibility in connection with storage fees.[7] *See* 2A Norman J. Singer, *Sutherland Statutory Construction: Statutes and Statutory Construction* § 46.07 (6th ed. 2000) ("Where one section of a statute contains a particular provision, omission of the same provision from a similar section is significant to show different legislative intent for the two section[s].").

Both lower courts acknowledged that section 169.1217 contains no express language addressing responsibility for storage fees when the district court orders a seized vehicle returned to the owner, but both courts found the bonding provision dispositive of the issue. The district court and court of appeals noted that subdivision 4, the bonding provision, effectively permits an owner to avoid storage fees altogether. Section 169.1217, subd. 4 states in pertinent part:

> If the owner of a vehicle that has been seized under this section seeks possession of the vehicle before the forfeiture action is determined, the owner may, subject to the approval of the appropriate agency, give security or post bond payable to the appropriate agency in an amount equal to the retail value of the seized vehicle. On posting the security or bond, the seized vehicle may be returned to the owner only if a disabling device is attached to the vehicle.

The court of appeals concluded that "the bonding provision, although not specifically addressing storage fees, provides an avenue for one in [Genin's] position to regain possession of the vehicle while the forfei-

6. Subdivision 9 states that a forfeited vehicle may either be sold by the appropriate agency, or may be kept for official use. Minn.Stat. § 169.1217, subds. 9(1)–(2) (1998). The statute addresses responsibility for storage fees only in the event that the vehicle is sold.

7. We recognize that impounding a vehicle and forfeiting a vehicle accomplish different public policy goals. With a section 169.1216 impoundment, there is probable cause to believe the driver is under the influence of alcohol and unsafe to drive. Therefore, impound-

ment addresses public safety concerns that are not only serious but *immediate.* Forfeiture under section 169.1217 requires process issued by a court. Successful forfeiture depends upon conviction of a designated offense (or designated license revocation or failure to appear). It penalizes the convicted person in addition to removing a vehicle from the owner. Because not all charges lead to conviction, a forfeiture proceeding contains a level of uncertainty not present with impoundment. In addition, the forfeiture process customarily will involve longer periods of vehicle storage.

ture action is pending." *Genin,* 609 N.W.2d at 269. Had Genin initiated the bonding procedure, the court reasoned, he could have avoided the accrual of storage fees. *Id.* "We conclude that the legislature contemplated the situation faced by appellant while he awaited final determination of the forfeiture action. [Genin's] failure to proceed under the bonding provision does not shift to the city the responsibility to pay the storage fees." *Id.* Similarly, the district court stated that the bonding provision "place[s] the responsibility for the storage fees squarely on the vehicle owner's, rather than the appropriate agency's, shoulders." We disagree with the lower courts and hold that the City of Centerville, not Genin, is responsible for the storage fees.

■ The bonding provision contains no express language addressing storage fees and we do not find the city's suggestion that there is a connection between the bonding provision and responsibility for storage fees to be compelling. Unlike the city, we see no logical or necessary connection between the bonding provision and storage fees. The bonding provision serves purposes unrelated to storage fees and for this reason we cannot rely on this provision alone in resolving Genin's question. The city's and the lower courts' interpretation imposes into the bonding provision a meaning that is unrelated to the provision and not clearly intended by the legislature. For us to interpret the provision as they did would be to add words to the statute, and the rules governing statutory construction forbid that. *See Phelps,* 537 N.W.2d at 274. We will not encroach upon the legislature's domain by adopting the city's proposed construction.

We agree with Genin that although section 169.1217 does not address storage fees, by giving the appropriate agency the right, title, and interest in a seized vehicle, the statute makes the agency responsible for the vehicle during seizure.[8] In addition, the appropriate agency has discretion not only in whether to allow an owner to bond the vehicle, but also in where to store the vehicle during seizure. *See* Minn.Stat. § 169.1217, subds. 3(1)–(4) and 4. That discretion further reinforces the view that the appropriate agency bears primary responsibility for a seized vehicle. Because the agency is responsible for and exercises unfettered control over the vehicle during seizure, requiring it to pay storage fees that accrue during that time is consistent with the statutory scheme.

Both lower courts assumed that Genin could have avoided storage fees by initiating the bonding procedure. The courts imply that requiring the city to pay the storage fees is unfair because Genin, and Genin alone, could have avoided the fees by using the bonding provision. *See, e.g., Genin,* 609 N.W.2d at 270 ("It is unfortunate that [Genin's] inaction resulted in storage fees that exceeded the value of his vehicle. Again, however, the statute details a procedure to avoid such costs."). However, the bonding provision provides the police with discretion unfettered by statutory guidance as to whether they should keep or return a vehicle pending a judicial determination on forfeiture. Thus, it is not clear that Genin could have avoided the storage fees. It is even less clear that the legislature intended this provision to shift the burden of storage fees from the appropriate agency to a vehicle owner; no express language reflects such an intent.

For all these reasons, we conclude that storage fees that accrue during the pen-

**8.** Minnesota Statutes § 169.1217, subd. 3 states in relevant part:

All right, title, and interest in a vehicle subject to forfeiture under this section vests in the appropriate agency upon commission of the conduct resulting in the designated offense of designated license revocation giv-

ing rise to the forfeiture. Any vehicle seized under this section is not subject to replevin, but is deemed to be in the custody of the appropriate agency subject to the orders and decrees of the court having jurisdiction over the forfeiture proceedings.

dency of seizure under section 169.1217 are the responsibility of the appropriate agency when the court ultimately dismisses the forfeiture complaint. Therefore, we hold that the City of Centerville, not Genin, is responsible for the storage fees.

Reversed.