Connie C. REIDER, Respondent,

v.

ANOKA–HENNEPIN SCHOOL DISTRICT NO. 11, Self–Insured, Relator,

and

Noran Neurological Clinic, and Blaine Chiropractic Center, Intervenors.

No. A06–1344.

Supreme Court of Minnesota.

March 8, 2007.

Kirk C. Thompson, Cronan Pearson Quinlivan P.A., Minneapolis, MN, for Appellant.

1. "In primary liability issues, the question is whether the injury arose out of and in the course of employment." *Jackson v. Red Owl Stores, Inc.,* 375 N.W.2d 13, 17 (Minn.1985).

Thomas D. Mottaz, David B. Kempston, Law Office of Thomas Mottaz, Anoka, MN, for Respondent.

Andrew W. Lynn, Lynn Scharfenberg & Assoc., Minneapolis, MN, for Amicus.

## OPINION

GILDEA, Justice.

The Workers' Compensation Court of Appeals (WCCA) affirmed, by panel majority, the denial of the request made by relator, Anoka–Hennepin School No. 11, for a medical examination by a neutral physician pursuant to Minn.Stat. § 176.155, subd. 2 (2006). The school district sought certiorari review in this court. We reverse and remand.

Since 1992, Connie C. Reider has been employed full-time by Anoka–Hennepin School District No. 11 as an American Sign Language (ASL) interpreter. On April 14, 2003, Reider sought chiropractic care from Dr. Thomas Rice for pain in her neck, shoulders, arms and upper and mid-back. Reider reported a gradual onset of symptoms associated with her work-related ASL interpreting activities. After a few weeks of treatment, the chiropractor recommended exercises. Following an aggravation of symptoms in December 2003, Reider continued with chiropractic treatment, increasing to three times per week but eventually decreasing in frequency to an "as-needed" basis.

After initially paying for Reider's chiropractic care, the school district denied primary liability.[1] On July 23, 2004, Reider filed a claim petition, seeking payment of outstanding medical and chiropractic treatment expenses for *Gillette*-injuries[2]

2. *Gillette v. Harold, Inc.,* 257 Minn. 313, 317–22, 101 N.W.2d 200, 204–07 (1960) (holding

to the cervical and thoracic spine. Reider also sought compensation for permanent partial disability to the cervical and thoracic spine.

On October 26, 2004, Reider was examined by neurologist Dr. Neil Dahlquist at the request of the school district. Dr. Dahlquist found that Reider had a completely normal range of motion in her spine, including her cervical, thoracic and lumbar spine. He also found that she had normal range of motion in her shoulders, elbows and wrists. Dr. Dahlquist concluded the employee had not sustained "any type of repetitive trauma or *Gillette* type of injury" and had no permanent injuries as a result of her job as a sign language interpreter.

In February 2005, following a sudden onset of neck pain, Reider was referred to neurologist Dr. Ana Patricia Groeschel.

Dr. Groeschel diagnosed a cervical strain causally related to Reider's work as a sign language interpreter. Dr. Groeschel recommended massage therapy, which initially reduced the new symptoms, but when the therapy was no longer effective, Reider discontinued that treatment.

The parties held a settlement conference in February 2005, but no settlement was reached. On March 29, 2005, the school district filed a motion for an examination by a neutral physician pursuant to Minn. Stat. § 176.155, subd. 2. In its request, the school district said "that a dispute exists as to whether the [e]mployee sustained a work injury and, if so, the nature and extent of any such injury." Because "of the disputes herein," the school district argued that Minn.Stat. § 176.155, subd. 2, required the appointment of a neutral physician.[3]

---

that where a preexisting infirmity is aggravated by repetitive trauma as a result of the ordinary and necessary duties of employment, the disability resulting from such aggravation is compensable as a personal injury under the workers' compensation statute).

**3.** Minnesota Statutes § 176.155, subd. 2, provides:

In each case of dispute as to the injury the commissioner of labor and industry, or in case of a hearing the compensation judge conducting the hearing, or the Workers' Compensation Court of Appeals if the matter is before it, may with or without the request of any interested party, designate a neutral physician to make an examination of the injured worker and report the findings to the commissioner of labor and industry, compensation judge, or the Workers' Compensation Court of Appeals, as the case may be; provided that the request of the interested party must comply with the rules of the commissioner of labor and industry and the Workers' Compensation Court of Appeals regulating the proper time and forms for the request, and further provided that when an interested party requests, not later than 30 days prior to a

scheduled prehearing conference, that a neutral physician be designated, the compensation judge shall make such a designation. When a party has requested the designation of a neutral physician prior to a prehearing conference, that party may withdraw the request at any time prior to the hearing. The commissioner of labor and industry, compensation judge, or the Workers' Compensation Court of Appeals, as the case may be, may request the neutral physician to answer any particular question with reference to the medical phases of the case, including questions calling for an opinion as to the cause and occurrence of the injury insofar as medical knowledge is relevant in the answer. A copy of the signed certificate of the neutral physician shall be mailed to the parties in interest and either party, within five days from date of mailing, may demand that the physician be produced for purposes of cross-examination. The signed certificate of a neutral physician is competent evidence of the facts stated therein. The expense of the examination shall be paid as ordered by the commissioner of labor and industry, compensation judge, or the Workers' Compensation Court of Appeals.

On April 7, 2005, the Office of Administrative Hearings (OAH) filed and served notice of hearing, scheduling the matter for a merits hearing on August 5, 2005. By letter dated June 13, 2005, the school district requested an order on its motion for a neutral-physician examination, or, in the alternative, a continuance. Reider then objected to the designation of a neutral physician, asserting that "in view of the upcoming hearing, it would be untimely to try to secure this opinion."

By order filed on June 30, 2005, the compensation judge denied the school district's motion. The judge provided three grounds for its decision to deny the request: (1) the motion was "deficient in necessary information in order to trigger" the mandatory designation of a neutral physician; (2) the mandatory provision did not apply because there had been no prehearing conference; and (3) the issues presented did not warrant a neutral examiner.[4]

The merits hearing was held as scheduled. During the hearing, Reider described her work activities and the circumstances of the onset of her symptoms. She testified that her symptoms would increase with work activities and decrease over time away from work, especially during the summer months. Other evidence included the medical records and reports from treating neurologist Groeschel and treating chiropractor Rice, both of whom concluded that Reider's condition was causally related to her work as an ASL interpreter. There was also the report from the school district's medical consultant, neurologist Dahlquist, who "found no evidence" of a *Gillette*-type injury. He concluded that Reider had incurred no permanent disability as a result of her work activities as an ASL interpreter and would not recommend any kind of restrictions.

Primarily in reliance on the medical records and the opinions of healthcare providers Groeschel and Rice, the compensation judge found that Reider sustained *Gillette*-type injuries to the cervical and thoracic spine, and awarded compensation for a 12.5 percent permanent partial disability. On appeal, the WCCA affirmed the primary liability determination and the award of permanent partial disability compensation. By panel majority, the WCCA also affirmed the compensation judge's denial of the school district's request for a neutral-physician examination. The school district obtained review by certiorari, challenging only the denial of the neutral-physician examination.

## I.

■ This case requires that we examine provisions within the Workers' Compensation Act regarding the use of neutral physicians. We review de novo this statutory question. *See Zurich American Ins. v. Bjelland,* 710 N.W.2d 64, 68 (Minn.2006).

At the time of its adoption in 1913, the Workers' Compensation Act provided for the discretionary appointment of a neutral

---

4. In denying the neutral-physician-examination motion, the compensation judge reasoned, in part:

WHEREAS, the Motion did not provide the following necessary documents: a complete medical history, medical records, history of the alleged injury, description of job duties, list of questions to be addressed, or list of possible neutral physicians who are willing and available to examine the employee and provide a narrative report in a timely manner; and

WHEREAS, the Motion for Neutral Physician is deficient in necessary information in order to trigger the provisions of Minn. Stat. § 176.155, subd. 2 * * *.

The compensation judge made no reference to applicable rules or other authority as to the information necessary "to trigger the provisions" of the statute, and we have found none.

physician to conduct an examination of the injured worker. Act of April 24, 1913, ch. 467, § 21, 1913 Minn. Laws 675, 685 (codified at Minn.Stat. § 8215 (1913)). In 1979, the legislature amended the statute to provide for the mandatory appointment of a neutral physician in cases in which an interested party requested such an appointment at least 30 days before the prehearing conference. Act of June 7, 1979, ch. 3, § 48, 1979 Minn. Laws Ex.Sess. 1256, 1286–87 (codified at Minn.Stat. § 176.155, subd. 2 (Minn.2000)). According to the 1979 legislation, the Commissioner of Labor and Industry "shall develop and maintain a list of neutral physicians available for designation pursuant to this subdivision." *Id.* In 2002, the statute was amended to delete the requirement for a list of neutral physicians. Act of March 22, 2002, ch. 262, § 15, 2002 Minn. Laws 268, 274 (codified at Minn.Stat. § 176.155, subd. 2 (2004)). The WCCA said it was not aware of any current lists of neutral physicians maintained by the Department of Labor and Industry (DOLI) or OAH; and that neither DOLI, OAH nor the WCCA had rules for an examination by a neutral physician. *Reider v. Anoka–Hennepin Sch. Dist. No. 11,* No. WC05–276, 2006 WL 1977512, at *7 (Minn. WCCA June 21, 2006).

■ The neutral physician provisions specifically at issue in this case are contained in Minn.Stat. § 176.155, subd. 2. This subdivision begins by providing that the compensation judge *"may* with or without the request of any interested party, designate a neutral physician to make an examination of the injured worker and report the findings." (Emphasis added.) The subdivision continues that "when an interested party requests, not later than 30 days prior to a scheduled prehearing conference, that a neutral physician be designated, the compensation judge *shall* make such a designation." Minn.Stat. § 176.155, subd. 2 (emphasis added).

The school district contends that its request falls within the later, or mandatory, portion of the subdivision and that the compensation judge's refusal to grant the request conflicts with the plain reading of the statute. Reider contends that the mandatory provision did not apply here because there was no prehearing conference in this case. The plain meaning of the statute supports the school district's reading.

■ The subdivision does not provide that a prehearing conference is a condition precedent as Reider argues. If that is what the legislature meant, it could have written the subdivision to read: *"if* there is a prehearing conference and an interested party requests, not later than 30 days prior to the scheduled prehearing conference, that a neutral physician be designated, the compensation judge *shall* make such a designation." The plain language of the statute does not make a prehearing conference such a condition and we cannot add terms that the legislature has omitted. *See Genin v. 1996 Mercury Marquis, VIN No. 2MEBP95F9CX644211, License No. MN 225 NSG,* 622 N.W.2d 114, 119 (Minn. 2001).[5]

In the alternative, Reider argues, and the WCCA panel majority found, that the two provisions of subdivision 2 are inconsistent thereby creating an ambiguity.

**5.** Reider cites *Hosking v. Metropolitan House Movers Corp.,* 272 Minn. 390, 138 N.W.2d 404 (1965), and *Stotz v. Sabin Bros.,* 257 N.W.2d 359 (Minn.1977), to support her argument that the designation of a neutral physician should be discretionary in all cases. These cases are not helpful to the issue presented here because they involve application of the statute before the mandatory provision was enacted in 1979.

Specifically, the WCCA majority noted that the statute provides

> that the compensation judge conducting the hearing "*may with* or without the request of any interested party, designate a neutral physician" and "*may* request the neutral physician to answer any particular question with reference to the medical phase of the case." (Emphasis added.) These provisions clearly leave whether to seek the assistance of a neutral physician to the discretion of the compensation judge and appear to conflict with the apparent mandatory language.

*Reider,* 2006 WL 1977512, at *8.[6]

The WCCA majority pointed to the legislature's purpose as a way to resolve the inconsistency, noting that chapter 176 was enacted to ensure prompt and efficient resolution of workers' compensation disputes. 2006 WL 1977512, at *9. Leaving the appointment of a neutral physician within the discretion of the compensation judge serves this purpose according to the WCCA majority. Because the compensation judge is the fact-finder, she is in the best position to determine whether a neutral physician is necessary. In this case, which the WCCA majority termed "routine," the legislative purpose is served by respecting the fact-finder's determination that a neutral physician was not necessary.[7]

■ We do not conclude that subdivision 2 is ambiguous. The subdivision must be read so as to give effect to all of its provisions. *See Owens v. Federated Mut. Implement & Hardware Ins.,* 328 N.W.2d 162, 164 (Minn.1983). When the statute is read to give effect to both provisions regarding the designation of neutral physicians, there is no conflict. The first provision gives the compensation judge the discretion to appoint a neutral physician when she believes it necessary, even if there has not been a request by the parties. This provision also gives the compensation judge discretion to appoint a neutral physician when a party has made a request but the request is not timely because the request is made less than 30 days before the prehearing conference. The second provision removes this discretion when a party has made a request and the request falls within the time deadline provided—not later than 30 days before a scheduled prehearing conference. The two provisions thus are complementary, not inconsistent.[8]

---

**6.** The WCCA majority also noted that Minn. Stat. § 176.391, subd. 2 (2006), gives compensation judges discretion to appoint neutral physicians and other experts. *Reider,* 2006 WL 1977512, at *8.

**7.** The dissent argues that the statute is "more reasonably * * * read as providing for the mandatory appointment of a neutral physician when there is a genuine need for such evidence." The legislature could have engrafted this condition onto the mandatory portion of the statute. It did not do so and it would be inconsistent with our precedent for us to rewrite the statute to include the dissent's "genuine need" requirement. *See Genin,* 622 N.W.2d at 119.

**8.** The dissent contends that this reading "removes the compensation judge's discretion from the statute." To the contrary, this reading ensures that both provisions in the statute—discretionary and mandatory—are given effect. It is the dissent's construction that renders a provision of the statute—the mandatory provision—a nullity. Under the dissent's reading, the appointment of a neutral physician would be "mandatory" only if the compensation judge first found that there was a "genuine need" for this evidence. This construction is simply another way of saying the appointment of a neutral physician is up to the discretion of the compensation judge and ignores the legislature's directive that "when an interested party requests * * * the compensation judge shall make such a designation." *See* Minn.Stat. § 176.155, subd. 2.

Even if we were to conclude that the two provisions were inconsistent, the mandatory provision would still control. The legislature has provided that where a general provision in a statute conflicts with a specific provision "in the same or another law," the specific provision controls. Minn.Stat. § 645.26, subd. 1 (2006). The general provision here would be the discretionary provision allowing the appointment of a neutral physician with or without a request. The specific provision would be the mandatory provision addressing a timely request by an interested party. As the legislature has directed, the specific controls the general. *Id.; see also Westrom v. Mn. Dept. of Labor and Indus.,* 686 N.W.2d 27, 36 (Minn.2004) (applying specific provision over general). The legislature has also provided that "[w]hen, in the same law, several clauses are irreconcilable, the clause last in order of date or position shall prevail." Minn.Stat. § 645.26, subd. 2 (2006). Applying this principle, the mandatory provision, having been enacted after the discretionary provision, and being last in position, would control the decision here.

Finally, we recognize that the WCCA majority concluded that "practical problems" would result from a conclusion that a party's timely request for a neutral physician always requires appointment. The WCCA majority specifically noted that a mandatory neutral-physician-examination process will be difficult to implement, particularly in the absence of a list of available neutral physicians or any rules establishing procedures for the designation of a neutral physician.

■ We are not unmindful of these concerns. Although a mandatory neutral-physician-examination process will probably not be without administrative burden or expense, "[i]t is for the legislature, not the [c]ourt, to judge the social utility of this statutory system, which has no common law counterpart, to balance the interests of employees and employers, and to make whatever adjustments and corrections it deems appropriate." *Parson v. Holman Erection Co., Inc.,* 428 N.W.2d 72, 76 (Minn.1988).

We hold that the neutral-physician-examination provision, Minn.Stat. § 176.155, subd. 2, is mandatory when an interested party makes a timely request for a neutral physician. The school district made its request for a neutral physician within the time deadline specified in Minn.Stat. § 176.155, subd. 2. Where, as here, the request is timely, the compensation judge has no discretion under the plain language of the statute to deny the request.

## II.

■ In its plea for relief, the school district requests that in the event a neutral-physician examination is allowed, the matter be remanded not only for the examination but also for appointment of a different compensation judge and a new hearing. We decline to grant this request. As the WCCA dissenting panel member noted, "compensation judges are experienced factfinders, and possess the integrity and willingness to review newly-received evidence and to re-evaluate the issues in view of that new evidence." *Reider,* 2006 WL 1977512, at *11.

We reverse the denial of a neutral-physician examination and remand the matter for further proceedings and redetermination on the existing record as supplemented by new evidence provided by the neutral physician.

Reversed and remanded.

ANDERSON, RUSSELL A., C.J., took no part in the consideration or decision of this case.

MEYER, Justice (dissenting).

I respectfully dissent. The school district's position, adopted by the majority, removes the compensation judge's discretion from the statute, is inconsistent with the function of a medical examination in the resolution of medical questions, and undermines the legislative plan for the efficient delivery of compensation to injured workers. I would conclude that the statute is not clear and free from all ambiguity, and that it should more reasonably be read as providing for the mandatory appointment of a neutral physician only when there is a genuine need for such evidence.

Minnesota Statutes § 176.155, subd. 2 (2006), makes the appointment of a physician both discretionary and mandatory upon the request of an interested party. The statute provides:

In each case of dispute as to the injury the commissioner of labor and industry, or in case of a hearing the compensation judge conducting the hearing, or the Workers' Compensation Court of Appeals if the matter is before it, *may with or without the request of any interested party*, designate a neutral physician to make an examination of the injured worker * * *, and further provided that *when an interested party requests*, not later than 30 days prior to a scheduled prehearing conference, that a neutral physician be designated, the compensation judge *shall make* such a designation.

Minn.Stat. § 176.155, subd. 2 (emphasis added). The statute further provides that the compensation judge "*may* request the neutral physician to answer any particular question with reference to the medical phases of the case." *Id.* (emphasis added).[9] In my view, reading the "*shall make*" language as mandatory upon timely request effectively extinguishes the discretion conferred through the "may with or without the request" clause. Moreover, to mandate an additional medical examination whenever the self-insured employer or insurance carrier makes a timely request seriously impedes the overarching intent of the legislature in providing medical and wage-loss compensation quickly and efficiently at a reasonable cost to employers[10] and is problematic in its implementation.[11]

The rule in this state is that a conflict in expert medical testimony must be resolved

9. In addition, any party "may demand that the physician be produced for purposes of cross-examination." Minn.Stat. § 176.155, subd. 2. And, "[t]he expense of the examination shall be paid as ordered by the * * * compensation judge." *Id.* However, there is no funding mechanism for the additional medical examination and no provision for the expense of the physician's cross-examination.

10. Minnesota Statutes § 176.001 (2006) provides that "[i]t is the intent of the legislature that chapter 176 be interpreted so as to assure the quick and efficient delivery of indemnity and medical benefits to injured workers at a reasonable cost to the employers who are subject to the provisions of this chapter."

11. As the WCCA observed:

In most cases, the resolution of a medical issue depends not solely on the opinion of the doctor but upon the testimony of witnesses and upon the credibility attached by the compensation judge to those witnesses. Typically, an attorney for one party or the other will provide these facts to an examining doctor in a hypothetical question. Absent any rules governing the utilization of a neutral physician, we do not know what factual information would be communicated to a neutral physician, particularly when the examination occurs prior to the hearing. Presumably, the compensation judge could not do so until the judge has heard the evidence. We further note there is no designated list of neutral physicians or any rules establishing procedures for the appointment of a neutral physician.

*Reider v. Anoka–Hennepin Sch. Dist. No. 11*, No. WC05–276, 2006 WL 1977512, at *9 (Minn. WCCA June 21, 2006).

by the factfinder. *Nord v. City of Cook,* 360 N.W.2d 337, 342 (Minn.1985). The neutral-physician examination statute was therefore designed to vest in the compensation judge "the discretionary power to appoint a neutral physician when, in the exercise of its judicial discretion, it would be needful or desirable in arriving at a decision." *See Hosking v. Metropolitan House Movers Corp.,* 272 Minn. 390, 397, 138 N.W.2d 404, 408 (1965). The study commission's recommendation, from which the 1979 amendment was drawn, contemplated "a check on the inconsistency of medical testimony and a means to provide a resolution of genuinely disputed medical issues which are beyond the capacity of the court to resolve." *Minnesota Workers' Compensation Study Commission, A Report to the Legislature and Governor* 37–38 (1979).[12] As a corollary, it seems to me that the neutral-physician examination provision would have no justifiable application in the common medical-causation dispute.[13] I believe the more reasonable construction of the statute, that gives meaning to all terms and effectuates legislative in-

tent, is that the compensation judge has discretion to appoint a neutral physician upon request made at any time, but that such appointment is mandatory upon timely request only when genuinely disputed medical issues are inherently complex. I would affirm.

PAGE, Justice (dissenting).

I join in the dissent of Justice Meyer.

---

**12.** There are situations in which expert opinion as to cause and effect may be desirable, but it is not always essential given other reliable evidence. *See Reimer v. Minnit Tool/ M.I.T. Tool Corp.,* 520 N.W.2d 397, 398 (Minn.1994) (holding that medical opinion connecting return of carpal tunnel syndrome-type symptoms to postinjury employment was not essential). On the other hand, expert testimony is deemed indispensable when the question is complicated and "carries the factfinders into realms that are properly within the province of medical experts." 7 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 128.05(1) (2006) (summarizing cases on basic rule when medical testimony is indispensable); *see, e.g., Stevens v. Computer Metal Prods., Inc.,* 312 N.W.2d 450, 453 (Minn.1981) (holding that expert medical opinion essential to causal relationship between work injury and ongoing disability). "Since the underlying reason for the rule requiring medical evidence in this class of cases is the inherent complexity of the

medical question involved, it follows logically that when the medical problem becomes sufficiently abstruse, the rule can be satisfied only by corresponding expertise in the medical witness * * *." Larson & Larson, *supra,* § 128.05(8). "[A]s the degree of complexity of the medical issue increases, so does the degree of requisite thoroughness and definiteness of [expert medical opinion regarding] diagnosis." *Id.,* § 128.05(9).

**13.** As the WCCA observed, the neutral-physician statute was not meant "to give a party the right to an additional medical expert." *Reider,* 2006 WL 1977512, at *8. The employee is already obligated to submit to a medical examination by the employer's physician. Minn.Stat. § 176.155, subd. 1 (2006). It seems to me most unlikely that the legislature intended to compel an additional medical examination in the absence of some legitimate need for such evidence in the accurate determination of the disputed medical question.