Torrey WESTROM, Respondent
(C9–03–128),

Dennis Westrom, et al., Respondents
(C0–03–129),

v.

MINNESOTA DEPARTMENT OF
LABOR AND INDUSTRY,
Appellant (C9–03–128).

Nos. C9–03–128, C0–03–129.

Supreme Court of Minnesota.

Sept. 2, 2004.

Erica K.G. Jacobson, Assistant Attorney General, Richard L. Varco, Jr., Assistant Attorney General, St. Paul, MN, for Relator/Appellant.

Edward F. Klinger, Moorhead, MN, Robert A. Awsumb, St. Paul, MN, for Respondents.

Mark R. Anfinson, Minneapolis, MN, for Amicus Curiae.

## OPINION

HANSON, Justice.

These consolidated appeals arise out of two separate actions that seek damages pursuant to the Minnesota Government Data Practices Act (MGDPA), Minn.Stat. §§ 13.01–.99 (2002). They are based on the release to the news media by appellant, the Department of Labor and Industry (DOLI), of orders and objections that are alleged to be confidential or protected nonpublic civil investigative data. The district court granted DOLI's motions for summary judgment, concluding that the released documents were "public" documents under the MGDPA and that the claims against DOLI should be dismissed with prejudice. The court of appeals reversed, holding that data reflected in the orders and objections were confidential or protected nonpublic data that should not have been released. *Westrom v. Minn. Dept. of Labor & Indus.*, 667 N.W.2d 148, 153 (Minn.App.2003). We affirm.

In July 1997, DOLI's Investigative Services Unit (ISU) began an internal investigation of Trendsetters Construction Company (Trendsetters) and WBC Construction (WBC), two companies that were owned by the individual respondents, who are members of the Westrom family (respondents will be referred to collectively as "the Westroms"). The investigation was made under Minn.Stat. § 176.181, subd. 3 (2002), to determine whether the two companies had obtained all compulsory workers' compensation insurance coverage. The ISU completed its internal investigation on March 6, 1998, and forwarded the investigation file to DOLI's Penalty Administrator. The Penalty Administrator calculated a monetary penalty and forwarded his recommendation to the Director of the Special Compensation Fund (Director).[1]

To this point in the investigation, no contact had been made with the Westroms and there is no indication in the record that they were aware of the investigation. On March 25, 1998, by way of an Order to

---

1. Although the Penalty Administrator's recommended penalty is not in the record, his affidavit states that his recommendation was accepted by the Director and is set out in the Order to Comply and Penalty Assessment.

Comply and Penalty Assessment, the Director notified respondents Dennis, Torrey, and Trevor Westrom,[2] and Trendsetters and WBC, that the ISU of DOLI had determined that the Westroms had violated Minn.Stat. § 176.181, subd. 2 (2002), because they "did not have workers' compensation insurance for the period 05/01/96 to 06/30/97." The order directed the Westroms to obtain insurance and assessed a monetary penalty.

The Westroms submitted written objections to the order, alleging that Trendsetters had inadvertently allowed its insurance to lapse but had obtained new insurance; that Torrey Westrom did not direct or control the activities of any employees of Trendsetters during the alleged violation period; that WBC is a partnership and the only respondent who had a partnership interest in it was Trevor Westrom; and that WBC "had no employees during the times at issue" and was exempt from any compulsory workers' compensation insurance requirements.[3]

After the objections were submitted, the Attorney General's office submitted discovery requests to the Westroms in July 1998. On September 24 and 25, 1998, DOLI issued two Amended Orders to Comply and Penalty Assessments, one applicable to Trendsetters and the other to WBC. The Westroms submitted written objections to the amended orders. With respect to Trendsetters, the Westroms alleged that Torrey Westrom did not direct or control the activities of any employee and was thus entitled to dismissal as an individual; that Trendsetters maintained workers' compensation coverage in November 1995; and that any lapse in coverage was inadvertent and was remedied as soon as the error was discovered. With respect to WBC, the Westroms alleged that Dennis Westrom and Torrey Westrom were not affiliated with WBC and should be dismissed from the action as individuals and that WBC was not required to carry workers' compensation insurance because it had no employees during the penalty period.

As early as October 19, 1998, DOLI released copies of the amended orders of

---

**2.** The release of these documents drew significant attention because it occurred during the final days of Torrey Westrom's campaign for re-election to the Minnesota House of Representatives.

**3.** DOLI issued the orders, and the Westroms filed their objections, pursuant to Minn.Stat. § 176.181, subd. 3(a) & (b) (2002), which provide:

(a) The commissioner [of DOLI], having reason to believe that an employer is in violation of subdivision 2, may issue an order directing the employer to comply with subdivision 2, to refrain from employing any person at any time without complying with subdivision 2, and to pay a penalty of up to $1,000 per employee per week during which the employer was not in compliance.

(b) An employer shall have ten working days to contest such an order by filing a

written objection with the commissioner, stating in detail its reasons for objecting. If the commissioner does not receive an objection within ten working days, the commissioner's order shall constitute a final order not subject to further review, and violation of that order shall be enforceable by way of civil contempt proceedings in district court. If the commissioner does receive timely objection, the commissioner shall refer the matter to the office of administrative hearings for an expedited hearing before a compensation judge. The compensation judge shall issue a decision either affirming, reversing, or modifying the commissioner's order within ten days of the close of the hearing. If the compensation judge affirms the commissioner's order, the compensation judge may order the employer to pay an additional penalty if the employer continued to employ persons without complying with subdivision 2 while the proceedings were pending.

September 24 and 25, 1998, and the objections to those orders, to various news organizations. DOLI has not shown in the record that on the date of that release the orders and objections had already been filed as part of a Petition for Expedited Hearing with the Office of Administrative Hearings, which would have commenced an administrative proceeding. Minn.Stat. § 176.181, subd. 3(b) (2002). In fact on October 19, 1998, an Assistant Attorney General sent the Westroms a letter informing them that DOLI had *not* filed a Petition for an Expedited Hearing as of that date and reiterating DOLI's willingness to "resolve these matters in an informal settlement conference." On October 26 and 27, 1998, DOLI released additional copies of the orders and objections to other news organizations. Again, the record does not disclose whether a Petition for an Expedited Hearing had been filed by those dates.

On December 28, 1998, the Westroms wrote to the Assistant Attorney General, requesting "a copy of any and all materials in your file, other than, of course, your personal notes and your correspondence with your client" in connection with "this investigation[.]" The Westroms also asked for clarification on "the status of this file under the Data Privacy Act" and inquired whether "that status [would] change now that the matter [was] filed for hearing[.]" [4] The record does not contain any other information regarding the filing of a Petition for Expedited Hearing on these matters.[5]

On April 28, 1999, the Assistant Attorney General wrote the Westroms a second letter responding to their December 1998 request for clarification. The Westroms interpret the Assistant Attorney General's response of that date to state that "the matter was still 'pending' and was an 'active investigation.'" This may be a fair inference, but the letter was more general, stating:

As I mentioned in [my February 22, 1999,] letter, all documentation retained by a state agency is presumed "public" unless classified to the contrary by Minnesota Statutes Chapter 13. As I understand the Data Practices Act, all documents maintained by a state agency during an active investigation or while a matter is "pending," is "protected non-public data" in the case of data not on individuals or "confidential" in the case of data on individuals.

The statute allows an agency discretion, however, to make any data classified as "confidential" or "protected non-public" available to the public if "access will aid the law enforcement process, promote public health or safety or dispel widespread rumor or unrest." Minn. Stat. § 13.39, subd. 2.[sic] (1998). At this time, I do not foresee invoking that discretion. If you [sic] client's confidentiality is of great concern, you may want to seek a protective order barring the agency from responding to a data practice request.

On February 20, 2000, pursuant to a request by the Westroms, the Commissioner of the Department of Administra-

---

4. There is no indication in the record that this matter was set for hearing before a compensation judge after the filing of a timely objection, as is required by section 176.181, subd. 3(b). According to the Westroms' opposition to DOLI's motion for summary judgment, the parties reached a confidential settlement with regard to the dispute in January 2000.

5. On March 9, 1999, DOLI issued a Second Amended Order to Comply and Penalty Assessment aimed at Dennis and Trevor Westrom, individually, and WBC. This order did not list Torrey Westrom as an individual respondent.

tion, the state agency charged with the primary responsibility for enforcing and administering the MGDPA, issued an advisory opinion concluding that the documents released by DOLI were active investigative data under Minn.Stat. § 13.39 (2002), and that DOLI's release of these documents violated the protections of the MGDPA. According to the Commissioner, "[t]he process had not yet reached a conclusion but DOLI still released data about X while his/her appeal was pending." On August 4, 2000, pursuant to a request by DOLI, the Attorney General contradicted that conclusion in an advisory opinion that the orders and objections were public data within the meaning of Minn.Stat. § 13.39.

In January 2002, the Westroms commenced this action against DOLI for damages under the MGDPA. The district court granted DOLI's motion for summary judgment, concluding that the orders and objections were public documents, the release of which was permitted by the MGDPA. The court of appeals reversed, holding that data reflected in the orders and objections was confidential or protected nonpublic data. We granted DOLI's petition for further review.

■ We review a grant of summary judgment to determine whether there are any genuine issues of material fact and whether the district court erred in applying the law to the facts. *Jorgensen v. Knutson*, 662 N.W.2d 893, 897 (Minn.2003). When a district court grants summary judgment after applying the law to undisputed facts, we review the legal conclusion de novo. *Lefto v. Hoggsbreath Enters., Inc.*, 581 N.W.2d 855, 856 (Minn.1998). Statutory construction is also reviewed de novo. *State v. Colosimo*, 669 N.W.2d 1, 8 (Minn.2003). We must, however, view the evidence in the light most favorable to the party against whom summary judgment

was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

## I.

■ The Westroms argue that the orders and objections released by DOLI reflect civil investigative data that are confidential or protected nonpublic data under Minn.Stat. § 13.39, subd. 2(a) (2002). DOLI argues that the data in the orders and objections are not civil investigative data because (1) DOLI did not "collect" these orders and objections; (2) the orders and objections were created after the investigation was complete, and, therefore, were not a part of the fact-finding or investigative process; and (3) the orders and objections do not fit within the statutory definition of either "confidential data" or "protected nonpublic data." DOLI also claims that the orders and objections constitute public documents under sections of the Workers' Compensation Act. Minn. Stat. §§ 175.10, 175.24 (2002). Review of these claims requires us to analyze and compare several provisions of the MGDPA.

### Overview of the MGDPA

All state agencies are required to "make and preserve all records necessary to a full and accurate knowledge of their official activities." Minn.Stat. § 15.17, subd. 1 (2002). Under subdivision 4 of section 15.17, access to these records is governed in relevant part by section 13.03 of the MGDPA. Section 13.03 provides in part:

Upon request to a responsible authority or designee, a person shall be permitted to inspect and copy public government data at reasonable times and places * * *.

* * * *

If the responsible authority or designee determines that the requested data is classified so as to deny the requesting

person access, the responsible authority or designee shall inform the requesting person of the determination * * * and shall cite the specific statutory section, temporary classification, or specific provision of federal law on which the determination is based.

Minn.Stat. § 13.03, subd. 3 (2002).

The MGDPA "establishes a presumption that government data are public and are accessible by the public for both inspection and copying unless there is federal law, a state statute, or a temporary classification of data that provides that certain data are not public." Minn.Stat. § 13.01, subd. 3 (2002). But section 13.02 then defines two categories of nonpublic data that are relevant here:

Subd. 3. "Confidential data on individuals" means data which is made not public by statute or federal law applicable to the data and is inaccessible to the individual subject of that data.

* * * *

Subd. 13. "Protected nonpublic data" means data not on individuals which is made by statute or federal law applicable to the data (a) not public and (b) not accessible to the subject of the data.

Minn.Stat. § 13.02, subds. 3, 13 (2002).

The Westroms do not base their claims on these definitions directly because each definition would appear to not apply to orders and objections that are, by necessity, accessible to the subjects of an investigation. But the Westroms argue that these definitions are supplemented and, in a sense, overridden by Minn.Stat. § 13.39 (2002), which specifically addresses the topic of civil investigative data. That section provides:

Subdivision 1. A "pending civil legal action" includes but is not limited to judicial, administrative or arbitration proceedings. Whether a civil legal ac-

tion is pending shall be determined by the chief attorney acting for the state agency, political subdivision or statewide system.

Subd. 2. (a) Except as provided in paragraph (b), [1] *data collected by state agencies,* political subdivisions, or statewide systems [2] *as part of an active investigation* [3] *undertaken for the purpose of the commencement or defense of a pending civil legal action, or which are retained in anticipation of a pending civil legal action,* are classified as protected nonpublic data pursuant to section 13.02, subdivision 13, in the case of data not on individuals and confidential pursuant to section 13.02, subdivision 3, in the case of data on individuals. Any agency, political subdivision, or statewide system may make data classified as confidential or protected nonpublic pursuant to this subdivision accessible to any person, agency or the public if the agency, political subdivision, or statewide system determines that the access will aid the law enforcement process, promote public health or safety or dispel widespread rumor or unrest.

(Emphasis added.) Thus, the Westroms argue that section 13.39 prohibits the release of civil investigative data by deeming it to be protected nonpublic data or confidential data, unless such release is expressly determined to be appropriate to aid law enforcement, promote public health or safety, or dispel widespread rumor or unrest. DOLI made no express determination of a need to release the data under section 13.39 and does not attempt to justify the release of the orders and objections on that basis. The question then is whether the orders and objections were civil investigative data, which requires review of the three highlighted elements of such data: (1) data collected by a state agency, (2) as part of an active investigation, (3)

undertaken for or in anticipation of a pending civil action.

*Data Collected*

■ We first consider whether the orders and objections constitute "data collected." Although the term "data" is not defined in the MGDPA, "data" usually is said to mean "individual facts, statistics, or items of information[.]" *The Random House Dictionary of the English Language* 508 (2d ed.1987). To "collect" means "to gather together; assemble[.]" *Id.* at 403. Thus, section 13.39, subdivision 2, requires some affirmative action by the state agency to gather or assemble data. *See St. Peter Herald v. City of St. Peter,* 496 N.W.2d 812, 814 (Minn.1993). When an agency gets information as a "passive recipient," that information is not "data collected." *Id.*

DOLI argues that the orders do not constitute "data collected" because the orders were not collected by the agency but instead were created by the agency itself. *St. Peter Herald* is the only case involving the MGDPA where this court has addressed whether the data in question constitute "data collected." 496 N.W.2d at 814. In *St. Peter Herald,* the city of St. Peter received a notice of claim in the form of a letter from a private attorney.

*Id.* at 813. When reporters requested copies of the letter, the city attorney refused to provide copies on the ground that the letter was private data. *Id.* Two newspapers then brought an action to compel disclosure of the notice of claim. *Id.* This court concluded that the information contained in a notice of claim sent to the city by a private attorney was not "data collected" because the city did not take any affirmative action to gather the information contained in the notice of claim. *Id.* at 814.

The facts here are quite different from *St. Peter Herald.* DOLI did undertake an internal investigation that involved the collection of data concerning Trendsetters, WBC, and the Westroms. DOLI acknowledges that the "issuance of the Orders was undoubtedly based upon information obtained by [DOLI's] ISU investigation[.]" Therefore, although DOLI created the orders, these orders are inextricably linked to and are the product of the data collected by DOLI during its investigation. To the extent that the orders reflect DOLI's conclusions, drawn from examining data gathered in the course of its investigation, we conclude that the orders constitute "data collected" under Minn.Stat. § 13.39, subd. 2(a) (2002).[6]

6. The dissent suggests that the data reflected in the orders was in the possession of DOLI, pursuant to the employers reporting requirements of Minn.Stat. § 176.195, subd. 1 (2002), before the ISU began its investigation, and therefore that the data was not collected as a part of that investigation. There are several difficulties with this suggestion. First, it presents an issue that was not raised by DOLI or addressed in the parties' briefs. Second, there is no support for this suggestion in the record. The only description in the record of the ISU investigation is in the affidavit of a senior investigator, who does not disclose the source of the data relied on in the orders, but does state that the ISU investigation lasted almost 7 months, from July 17, 1997, to March 6, 1998. The duration of the investigation does not support the conclusion that the investigators relied solely on data available by a single phone call to the Special Compensation Fund Insurance Verification Section. Third, the information available from the Insurance Verification Section is only the name of the insurer and the policy number for each period of coverage for a particular employer. That information might disclose that there was no insurance in effect for a certain period but would not support the conclusions, as reflected in the orders, that insurance was required for that period (i.e. that the individual or company had employees) or that the named respondents were persons who were legally responsible to obtain insurance coverage or to pay any penalties for

With respect to the objections, DOLI contends that they do not constitute "data collected" because DOLI was merely a "passive recipient" of these objections. But DOLI issued the orders and the Westroms were required to submit written objections within ten days in order to preserve their right to challenge the order. Minn.Stat. § 176.181, subd. 3(b) (2002). By requiring that an employer file timely objections to its orders in order to maintain a vital right, DOLI becomes more than a "passive recipient" of the objections. The objections are not in any sense voluntary, but are a continuation of DOLI's data collection process. We conclude that the objections also constitute "data collected" under Minn.Stat. § 13.39, subd. 2(a) (2002).

*Active Investigation*

■ We next consider whether the investigation was active when the orders and objections were released to the media. This inquiry requires us to determine whether DOLI's fact-finding process had been completed or was ongoing at that time.

Although DOLI argues that the formal investigation ended on March 6, 1998, there is evidence that the fact-finding process did not end at that time. The orders and objections were created in September and October 1998 and released to the media in October 1998. On March 9, 1999, DOLI issued a second amended order aimed at Dennis and Trevor Westrom, individually, and WBC—an order that did not list Torrey Westrom as an individual respondent. The record does not indicate what led to the decision to issue this second amended order and to effectively drop the charges against Torrey Westrom in the WBC matter. Yet, viewing the evi-

dence in the light most favorable to the Westroms, the party against whom summary judgment was granted, this decision may have been the result of fact-finding conducted subsequent to the issuance of the September 25, 1998, order identifying Torrey Westrom as an individual respondent in the WBC matter. This evidence suggests that the investigation was still active when the orders and objections were created and released.

Further, DOLI's argument would presume that the investigation ended before the first orders were issued. But, the record does not indicate that the Westroms were even aware that an investigation was under way until the orders were issued. We are reluctant to conclude that a civil investigation could begin and end before the subject of the investigation is provided notice, much less given the opportunity to respond.

Finally, for summary judgment purposes, the Westroms are entitled to rely on the admissions made in the letter of the Assistant Attorney General, on behalf of DOLI, that the matter was still "pending" and was an "active investigation" as late as April 28, 1999, long after the orders and objections had been released to the media.

*For or in Anticipation of a Pending Civil Action*

■ We next consider whether the investigation was "undertaken either for the purpose of commencing or defending a [pending] civil legal action or of [retaining] the data in anticipation of [a pending civil] legal action." *St. Peter Herald*, 496 N.W.2d at 814. "A 'pending civil legal action' includes but is not limited to judicial, administrative or arbitration proceedings." Minn.Stat. § 13.39, subd. 1 (2002).

the failure to obtain coverage. Consequently, this suggestion does not provide a basis for

summary judgment.

Under Minn.Stat. § 176.181, subd. 3(a) and (b), the commissioner of DOLI must give an employer ten working days to file an objection once an order is issued. If the employer does not file an objection within ten working days, the order becomes final, and "violation of that order shall be enforceable by way of civil contempt proceedings in district court." Minn.Stat. § 176.181, subd. 3(b) (2002). If the employer files a timely objection, the commissioner has to "refer the matter to the office of administrative hearings for an expedited hearing before a compensation judge." *Id.* Thus, the statute requires the commissioner to retain the orders in anticipation of a judicial proceeding and/or to retain the orders and objections in anticipation of an administrative proceeding, each of which fits within the definition of a "pending civil legal action."

## II.

■ DOLI argues that even if the orders and objections could properly be classified as civil investigative data pursuant to section 13.39, subdivision 2(a), they do not fit within the definition of either "confidential data on individuals" or "protected nonpublic data" provided by Minn.Stat. § 13.02, subds. 3 and 13. DOLI points out that to be "protected nonpublic data" under subdivision 13, the data must be "not accessible to the subject of the data," and to be "confidential data on individuals" under subdivision 3, the data must also be "inaccessible to the individual subject of the data." Obviously, the orders and objections were accessible to the Westroms.

But section 13.39, subdivision 2, appears to override these definitions when it states that data that qualifies as civil investigative data "are classified as protected nonpublic data pursuant to section 13.02, subdivision 13, in the case of data not on individuals and confidential pursuant to section 13.02, subdivision 3, in the case of data on individuals."

We view any conflict between section 13.39 and section 13.02 as being subject to the rule of statutory construction that:

When a general provision in a law is in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions be irreconcilable, the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted at a later session and it shall be the manifest intention of the legislature that such general provision shall prevail.

Minn.Stat. § 645.26, subd. 1 (2002). Section 13.39, subdivision 2, is the special provision because it deals specifically with the subject of civil investigative data. It prevails over the general provisions of section 13.02, subdivisions 3 and 13, which provide definitions that are applicable in all other circumstances to classify data as confidential data on individuals or protected nonpublic data.

## III.

■ At oral argument, the Westroms conceded that the orders and objections would have constituted public documents had DOLI filed a petition for an expedited hearing with the office of administrative hearings before releasing the documents to the news organizations. In essence, the Westroms agreed that the orders and objections would have become public documents upon the filing of the petition because they then would become a part of the record of an administrative contested case proceeding.

It appears from the record that DOLI filed a petition for an expedited hearing sometime between October 19, 1998, when

the objections and orders were first released to the news media, and December 28, 1998, when a letter written by the Westroms suggests that the matter had been "filed for hearing[.]" Viewing the evidence in the light most favorable to the Westroms, there are genuine issues of material fact as to whether the orders and objections were released to the media before DOLI commenced the contested case proceeding. Thus, we conclude that summary judgment was not appropriate. We leave it to the district court to determine when the orders and objections may have lost their character as protected nonpublic or confidential civil investigative data.

## IV.

■ DOLI argues that the protection of civil investigative data under section 13.39, subdivision 2, is overridden by provisions of the Workers' Compensation Act, under which the investigation was undertaken. One provision states:

> The department of labor and industry shall be open for the transaction of business during all business hours of each and every day, except Saturdays, Sundays and legal holidays. The hearings of the workers' compensation division are open to the public and may be adjourned from time to time. All the proceedings of the division shall be shown on its records, which are public records.

Minn.Stat. § 175.10. DOLI suggests that this provision is controlling because the creation of orders and objections constitute a "proceeding."

But this provision deals broadly with "proceedings" of the workers' compensation division and goes only so far as to declare them "public," without addressing data privacy issues. We do not find section 175.10 particularly relevant to the issue before us, and, to the extent it is relevant, the more specific provisions of section 13.39, subdivision 2, would prevail over section 175.10.

Another provision of the workers' compensation act states:

> On request of the department of labor and industry, and within the time limited therein, every employer of labor, any officer of a labor organization, or any person from whom the department of labor and industry shall find it necessary to gather information, shall make a certified report to the department, upon blanks furnished by it, of all matters covered by the request. The names of persons or concerns supplying such information shall not be disclosed. Every *notice, order, or direction* given by such department shall be in writing, signed by an officer or inspector of such department, or a person specially designated for the purpose, and be served by the signer. *Papers so served and all records and documents of the department are hereby declared public documents and shall not be destroyed within two years after their return or receipt by such department.*

Minn.Stat. § 175.24 (2002) (emphasis added). The subject of this provision is the data provided by employers and others in a report that has been requested by DOLI. The orders issued to the Westroms did not request a report under this section and it is therefore irrelevant to the issues before us. Further, because section 175.24 only secondarily addresses the public character of the "records and documents," its provision would not prevail over the more specific requirements of the MGDPA.

We affirm the decision of the court of appeals, reverse the summary judgment granted by the district court, and remand for further proceedings.

Affirmed.

PAGE, Justice (dissenting).

I respectfully dissent. The Minnesota Government Data Practices Act provides that:

All government data collected, created, received, maintained or disseminated by a state agency, political subdivision, or statewide system shall be public unless classified by statute, or temporary classification pursuant to section 13.06, or federal law, as nonpublic or protected nonpublic, or with respect to data on individuals, as private or confidential.

Minn.Stat. § 13.03, subd. 1 (2002).

Under the act, "nonpublic data" means "data not on individuals that is made by statute or federal law applicable to the data: (a) not accessible to the public; and (b) accessible to the subject, if any, of the data." Minn.Stat. § 13.02, subd. 9 (2002). "Protected nonpublic data" means "data not on individuals which is made by statute or federal law applicable to the data (a) not public and (b) not accessible to the subject of the data." Minn.Stat. § 13.02, subd. 13 (2002). "Private data on individuals" means "data which is made by statute or federal law applicable to the data: (a) not public; and (b) accessible to the individual subject of that data." Minn.Stat. § 13.02, subd. 12 (2002). "Confidential data on individuals" means "data which is made not public by statute or federal law applicable to the data and is inaccessible to the individual subject of that data." Minn.Stat. § 13.02, subd. 3 (2002).

The Westroms contend and the court concludes that the orders and objections at issue are either protected nonpublic data or confidential data on individuals because the data contained in the orders and objections was collected by the Department of Labor and Industry (DOLI) as part of an active investigation undertaken for the purpose of commencement or defense of a pending civil legal action under Minn.Stat. § 13.39, subd. 2 (2002).[1] While I agree that the data was collected by DOLI, I do not agree that it was collected as part of an active investigation undertaken for purposes related to the commencement or defense of a pending civil legal action. The data collected by DOLI contained in the orders and objections at issue here consists of the names of the employers, the fact that the employers did not carry workers' compensation insurance for various periods between April 1, 1996, and November 7, 1997, and the employers' denials and explanations with respect to their alleged failure to carry workers' compensation insurance. In reaching its conclusions about the status of the data, the court ignores the status of the data at the time it was collected, which was before it became part of the "active investigation." Although the court concludes that the "orders are inextricably linked to and are the product of the data collected by DOLI during its investigation," in fact, the data is "inextricably" linked to and collected by the Special Compensation Fund (SCF) at DOLI pursuant to Minn.Stat. § 176.185, subd. 1 (2002), and Minn. R. 5222.2002 (2003).

"Every employer * * * liable under this chapter to pay compensation shall insure payment of compensation with some insur-

---

1. Section 13.39, subdivision 2, provides:

(a) Except as provided in paragraph (b), data collected by state agencies, political subdivisions, or statewide systems as part of an active investigation undertaken for the purpose of the commencement or defense of a pending civil legal action, or which are retained in anticipation of a pending civil legal action, are classified as protected nonpublic data pursuant to section 13.02, subdivision 13, in the case of data not on individuals and confidential pursuant to section 13.02, subdivision 3, in the case of data on individuals.

ance carrier * * * or obtain a written order from the commissioner of commerce exempting the employer from insuring liability for compensation and permitting self-insurance of the liability." Minn.Stat. § 176.181, subd. 2 (2002). Minnesota Statutes § 176.185, subdivision (1) (2002), provides in relevant part, "[w]ithin ten days after the issuance of a policy of insurance covering the liability to pay compensation under this chapter * * *, the insurer shall file notice of coverage with the commissioner under rules and on forms prescribed by the commissioner." The rules enacted by DOLI require insurers to file notices of coverage with the Minnesota Workers' Compensation Insurers Association, Inc. (MWCIA). Minn. R. 5222.2002 (2003). At the point this data is collected under section 176.185, subdivision 1, and the rule, there is no statute, temporary classification, or federal law classifying the data as nonpublic, protected nonpublic, private data on individuals, or confidential data on individuals. Therefore, the data is public when collected.

Indeed, according to a manual co-written by the then-acting director of the SCF, although insurance registrations and terminations are submitted to MWCIA:

> The Special Compensation Fund Insurance Verification Section still remains the official source of all information regarding workers' compensation coverage in the State of Minnesota. All inquiries for this purpose should be addressed to that section as follows:
>
> Special Compensation Fund
> Insurance Verification
> 444 Lafayette Road
> St. Paul, MN 55101
>
> Most inquires can be accomplished much more efficiently by telephone, and the number to call is:
>
> (612) 296–2170, Ext. 27 or 28

The information available from this source includes:

1. Coverage related to a particular date or a particular period.

2. All known coverage for a particular employer.

3. The name of the insurer.

4. The Policy Number for each period of coverage.

The sources of this information are paper records maintained in the Insurance Verification Section for periods from 1970 through February 28, 1987; computer files of the workers' Compensation Insurers Association for periods form [sic] 1983 on an unofficial basis and from March 1, 1987 that is the official record (Insurance Verification has a terminal in the office to obtain this information.); and information extracted from the actuarial files the Workers' Compensation Insurers Association maintains on all covered employers. All sources are checked, when necessary, but if the only source of information available is the actuarial files, there can be considerable delays if the particular file needed is out for auditing.

Insurance Verification will provide a telephone response whenever possible, followed up with a written record in all cases. If any doubt exists as to the proper insurer for an employer, Insurance Verification should be contacted prior to filing a Claim Petition or Petition for Contribution.

Leo M. Eide & William R. Howard, *A Primer on the Special Compensation Fund* 56–58, *in* Minnesota Institute of Legal Education, *Workers' Compensation* (1987).

Thus, it is clear that before the "active investigation" began, the names of the employers and information with respect to the employers' lack of coverage was in

DOLI's possession and constituted public data under Minn.Stat. § 13.03, subd. 1. The fact that this data was used in an active investigation commenced after it was collected does not convert that public data into either protected nonpublic data or confidential data on individuals.

As the Eide/Howard manual points out, the data at issue is public and is available to any member of the public merely by placing a telephone call to the SCF. It would be anomalous to, on one hand, have the data classified as public and available to the public by telephone while, on the other hand, have it classified as either protected nonpublic data or confidential data on individuals because it is contained in an order notifying the employer of a workers' compensation insurance coverage violation. Placing public data into an order issued as part of a pending civil legal action does not cause the data to cease being public. We recently stated that the Data Practices Act is "intended to promote the general welfare by making government information accessible to the people." *Star Tribune Co. v. Univ. of Minn. Bd. of Regents*, 683 N.W.2d 274, 286 (2004). In the end, the court's interpretation of section 13.39, subdivision 2, in this case ill serves the cause of openness in government. Therefore, I would reverse the court of appeals and reinstate the district court orders dismissing the Westroms' actions.[2]

---

2. While I believe that the court's analysis of the section 13.39 language classifying data collected as part of an active investigation as protected nonpublic or confidential is faulty, I do not intend to discuss that analysis here.