*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2035**

Michael A. Friedman, Richard J. Nigon and Geoff Hirman,
as Trustees of the North Shore Pines Trust,
Appellants,

vs.

Rosemary Palmer,
Respondent.

**Filed May 11, 2015
Affirmed
Kirk, Judge**

Crow Wing County District Court
File No. 18-CV-14-362

James W. Nelson, Brainerd, Minnesota (for appellants)

Patrick M. Krueger, Borden, Steinbauer, Krueger & Knudson, P.A., Brainerd, Minnesota
(for respondent)

Considered and decided by Connolly, Presiding Judge; Chutich, Judge; and Kirk,
Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

In this restrictive covenant dispute, appellants challenge the district court's grant
of summary judgment to respondent. We affirm.

FACTS

The facts in this case are undisputed. In December 1955, the owners of nine parcels of real property in Crow Wing County established a trust agreement, which was recorded the day after it was established. The property owners have since amended the trust agreement four times, and all four amendments were recorded. The first amendment occurred in 1957, when the property owners established certain restrictions, reservations, and servitudes on the land, including a requirement that structures be "set back at least 50 feet from both the present easterly and westerly line of each of the separate parcels of land owned by the several parties hereto."

The second amendment, in 1976, extended the terms of the trust until 2005. The third amendment, in 1997, allowed the nine authorized parcels to be further subdivided, subject to the existing restrictions, reservations, and servitudes of the trust agreement, "provided that both the remaining portion of the original parcel and the new subdivided parcel shall meet all minimum size and setback requirements under then existing County Zoning standards applicable to residential lake shore lots." In 2001, the property owners amended the agreement for the fourth time. They extended the terms of the trust agreement and "[t]he restrictions, reservations and servitudes which constitute covenants running with the land" until 2030 and deemed the previous restrictions, reservations, and servitudes created anew.

Respondent Rosemary Palmer is the owner of real property that is subject to the terms of the trust. Although Palmer's family originally owned a large parcel of land, they decided to subdivide the property in 2001. In 2002, the trustees approved the subdivision

of the property, and the Palmer family sold a portion of their property. Between 2008 and 2010, Palmer constructed a deck on her property that is attached to the east side of her home. The deck is set back at least 10 feet but less than 50 feet from the current east boundary of Palmer's property. The deck is set back more than 50 feet from the property lines as they existed from 1957 until the property was subdivided in 2002.

In January 2014, appellants Michael A. Friedman, Richard J. Nigon, and Geoff Hirman, as Trustees of the North Shore Pines Trust (the trustees), filed a complaint against Palmer alleging that she violated the restrictive covenant in the trust agreement when she built the deck less than 50 feet from the current boundary of her property. The trustees requested removal of the deck.

Palmer moved for summary judgment, and the trustees filed a responsive motion for summary judgment. Following a hearing, the district court granted Palmer's motion and denied the trustees' motion. The district court concluded that the 2001 amendment to the trust deemed the 1957 agreement created anew, which meant that the 50-foot setback requirement in the 1957 agreement applied to property lines as they existed at the time the agreement was recorded in 2001. Because the subdivision of Palmer's property did not occur until 2002, the district court concluded that the 50-foot setback requirement applied to the property lines as they existed in 2001, not to the new property lines that were created in 2002. Thus, the district court concluded that Palmer's deck does not violate the restrictive covenant because it is within 50 feet of the property lines as they existed prior to the 2002 subdivision. This appeal follows.

3

**D E C I S I O N**

The 1957 restrictive covenant, which was created anew and extended by the 2001 amendment, states that "[n]o structure, permanent or otherwise, shall hereafter be erected on any of the separate parcels of land . . . unless said structures are set back at least 50 feet from both the *present* easterly and westerly line of each of the separate parcels of land." (Emphasis added.) The parties agree that the restrictive covenant is unambiguous but disagree about how to interpret the word "present" in the covenant. The trustees assert that, as used in the covenant, "present" establishes a 50-foot setback restriction that applies to the property lines as they exist at any time the covenant is *read or applied*, and that the restriction applies "to any day of any week in any year." Palmer argues that "present" refers to the property lines as they existed *on the effective date of the renewal of the restrictive covenant in 2001*. Thus, according to Palmer, because the boundary line of her unsubdivided property in 2001 was the original boundary of her property, the deck on her subsequently subdivided property does not violate the 50-foot setback requirement. By summary judgment, the district court adopted Palmer's reading of the restrictive covenant.

Summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.03. On appeal from summary judgment, this court reviews "whether there are any genuine issues of material fact and whether the district court erred in its application of the law." *STAR Ctrs., Inc. v. Faegre*

4

*& Benson, L.L.P.*, 644 N.W.2d 72, 76 (Minn. 2002). When, as in this case, the "district court grants summary judgment after applying the law to undisputed facts, we review the legal conclusion de novo." *Westrom v. Minn. Dep't of Labor & Indus.*, 686 N.W.2d 27, 32 (Minn. 2004). We must "view the evidence in the light most favorable to the party against whom summary judgment was granted." *Id.*

Restrictive covenants are subject to the standard rules of contract interpretation. *See Snyder's Drug Stores, Inc. v. Sheehy Props.*, 266 N.W.2d 882, 884-85 (Minn. 1978). "[C]ovenants restricting the use of property will be given the full force and effect intended by the party who created them, and where the language used is clear and unambiguous it will be given its obvious meaning." *LaValle v. Kulkay*, 277 N.W.2d 400, 403 (Minn. 1979). Generally, the "construction and effect of an unambiguous contract presents a question of law for the court. The determination of whether a contract is ambiguous is also a question of law, but the interpretation of an ambiguous contract is a question of fact for the jury." *Savela v. City of Duluth*, 806 N.W.2d 793, 808 (Minn. 2011) (citations omitted). A contract's language is unambiguous if it has only one reasonable interpretation. *Halla Nursery, Inc. v. City of Chanhassen*, 781 N.W.2d 880, 884 (Minn. 2010).

Here, because the parties agree that the restrictive covenant is unambiguous, the question before this court is the legal question of the meaning of "present" in this restrictive covenant. Contracts are read to give effect to all of their terms. *E.g.*, *River Valley Truck Ctr., Inc. v. Interstate Cos.*, 704 N.W.2d 154, 163 (Minn. 2005); *Current Tech. Concepts, Inc. v. Irie Enters., Inc.*, 530 N.W.2d 539, 543 (Minn. 1995); *Chergosky*

5

*v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 525 (Minn. 1990). Here, if the drafters of the trust agreement had wanted the restrictive covenant to apply to the east and west property lines as they exist at any point in time, as the trustees argue, they could have omitted "present" from the restrictive covenant. Thus, the trustees' proposed reading of the restrictive covenant runs afoul of a basic rule of contract interpretation. Further, the district court's reading of the restrictive covenant is consistent with both the commonly accepted and the legally accepted understandings of "present." *See The American Heritage Dictionary* 1393 (5th ed. 2011) (defining "present" as "[a] moment or period in time perceptible as intermediate between past and future; now"); *Black's Law Dictionary* 1302 (9th ed. 2009) (defining "present" as "[n]ow existing; at hand"). Applying the rules of contract interpretation, and giving "present" its plain and ordinary meaning, the restrictive covenant applies to the "easterly and westerly line of each of the separate parcels of land" as they existed when the amendment renewing the restrictive covenant was recorded in 2001.

Thus, because Palmer's property had not yet been subdivided when the amendment renewing the restrictive covenant was recorded in 2001, the original property lines that were in existence in 1957 were still intact. Palmer therefore did not violate the restrictive covenant by building the deck attached to her home because it is set back at least 50 feet from the original property line. The district court did not err by granting summary judgment to Palmer.

**Affirmed.**