In re the Marriage of Andrew Jay
REDLEAF, petitioner,
Appellant,

v.

Elizabeth Grace REDLEAF,
Respondent.

Nos. A11–202, A11–496.

Court of Appeals of Minnesota.

Dec. 12, 2011.

Alan C. Eidsness, Suzanne M. Remington, Jaime Driggs, Henson & Efron, P.A., Minneapolis, MN, for appellant.

Mark J. Briol, Morgan R. Smock, Briol & Associates, PLLC, Minneapolis, MN; and Nancy Zalusky Berg, Allison Maxim, Walling, Berg & Debele, P.A., Minneapolis, MN, for respondent.

Considered and decided by KALITOWSKI, Presiding Judge; PETERSON, Judge; and CRIPPEN, Judge.*

## OPINION

KALITOWSKI, Judge.

Appellant challenges the rate of post-judgment interest that the district court imposed on judgments entered as a result of appellant's failure to make required property-distribution payments following the dissolution of his marriage to respondent.

## FACTS

Appellant, Andrew Redleaf, and respondent, Elizabeth Redleaf, agreed to dissolve their marriage in a Marriage Termination Agreement (MTA) in February 2008. The parties' primary marital assets were appellant's ownership interests in Whitebox Advisors, LLC, AJR Financial, LLC, and Whitebox Intermarket Fund, LP. To effectuate a division of these assets, the MTA provided that respondent would waive her interest in the businesses in exchange for $140,750,000 in cash payments. The payment schedule called for two lump-sum payments totaling $20,750,000 on or before February 15, 2008, and one lump-sum payment of $30,000,000 on March 15, 2013. The remainder was to be paid in monthly installments of $1,500,000 over a five-year period beginning on March 15, 2008. Appellant personally secured the property settlement and the MTA was silent as to the rate of interest to be applied in the event appellant defaulted on his obligation. On February 20, 2008, the district court entered a judgment and decree dissolving the marriage and adopting the MTA's property-settlement terms.

For several months, appellant complied with the terms of the property settlement. He made the initial lump-sum payments in February 2008 and was current on the monthly-installment payments through January 2009. Alleging a decline in income, appellant missed payments from February 2009 through March 2010. Respondent subsequently obtained judgments totaling $21,000,000.

In May 2009, appellant moved to reopen the judgment, arguing that it was no longer equitable for the decree to have prospective application because of the change in his financial circumstances. The district court denied his motion, and this court affirmed. *See Redleaf v. Redleaf,* Nos. A09–1805, A09–2360, A10–10, 2010 WL 3543458, at *4 (Minn.App. Sept. 14, 2010). Appellant paid respondent $21,000,000 in arrears, but again missed payments for July, August, and September 2010.

Respondent moved for judgment in the amount of $4,500,000 and appellant opposed entry of judgment on the grounds that it was inequitable in light of his substantial performance and full performance was impossible. He also requested that if the court granted judgment to respondent, it limit the rate of interest to a simple rate of four percent per annum because the ten percent rate mandated on judgments over $50,000 by the post-judgment interest statute, Minn.Stat. § 549.09, subd. 1(c)(2) (Supp.2009), was inequitable in light of the market interest rate.

On October 4, 2010, the district court issued an order to enter and docket judgment in respondent's favor in the amount of $4,500,000. Over appellant's objection,

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

the district court awarded respondent interest at the statutory rate of ten percent, concluding that it "must apply the 2009 version of Minn.Stat. § 549.09 which was in effect at the commencement of this action. To do otherwise, the [c]ourt would be abrogating the clear intent of the ... [l]egislature." In the months following, respondent obtained additional judgments totaling $4,500,000 for October through December 2010, $3,000,000 for January and February 2011, and $1,500,000 for March 2011. These judgments also bear the statutory post-judgment interest rate. The appeals from these judgments were consolidated.

## ISSUE

Did the district court err in concluding that it was bound to apply the post-judgment interest rate provided for in Minn. Stat. § 549.09, subd. 1(c)(2)?

## ANALYSIS

 The sole issue on appeal is whether the district court correctly concluded that Minn.Stat. § 549.09, subd. 1(c)(2), deprived it of discretion to set post-judgment interest at some rate other than ten percent. The application and interpretation of a statute are questions of law which we review de novo. *Goldman v. Greenwood,* 748 N.W.2d 279, 282 (Minn. 2008).

When a judgment or award is for the recovery of money, Minnesota law provides that "interest shall accrue on the unpaid balance of the judgment or award from the time that it is entered or made until it is paid." Minn.Stat. § 549.09, subd. 2 (2010), *see id.,* subd. 1(a). Until 2009, section 549.09 imposed post-judgment interest at a variable rate that mirrored the market rate of interest. 1979 Minn. Laws ch. 105, § 1, at 148; *see* Minn. Stat. § 549.09, subd. 1(c) (2008) (establish-

ing a variable rate of interest "based on the secondary market yield of one year United States Treasury bills"). But in 2009, the legislature added a new provision setting a fixed rate of interest on large judgments. 2009 Minn. Laws ch. 83, art. 2, § 35. Now, "[f]or a judgment or award over $50,000, ... the interest rate shall be ten percent per year until paid." Minn. Stat. § 549.09, subd. 1(c)(2).

This statutory provision is unambiguous. By using the term "shall" in setting the rate of interest, the legislature mandated that the district court set a rate of ten percent when a judgment amount exceeds $50,000. *See* Minn.Stat. § 645.44, subd. 16 (2010) (stating that the word "shall" is mandatory when used in Minnesota statutes). And we have previously held that the pre–2009 version of this statute applies to marriage-dissolution judgments. *Riley v. Riley,* 385 N.W.2d 883, 888 (Minn.App. 1986); *see also Fernandez v. Fernandez,* 373 N.W.2d 636, 638 (Minn.App.1985) (reversing the district court's award of 14% post-judgment interest on a dissolution judgment because the statutory rate was 9%).

Our decision in *Riley* was informed by a related statutory provision that mandated pre-judgment interest on all judgments but excluded judgments in " 'dissolution, annulment, or legal separation actions.' " 385 N.W.2d at 888 (quoting Minn.Stat. § 549.09, subd. 1(b)(2) (1984)). We reasoned that the absence of such an exclusion in the post-judgment provision "indicates that awards of interest on dissolution judgments are included in the post[-]judgment interest provisions." *Id.* (citing Minn.Stat. § 645.19 (1984) (stating that "[e]xceptions expressed in a law shall be construed to exclude all others")). Although the legislature has since removed this exclusion from the pre-judgment interest provision, the reasoning of *Riley*

remains persuasive; if the legislature intended to exempt marital-dissolution judgments from the statutory rate of post-judgment interest, it could have drafted such an exclusion.

Appellant argues that neither the plain language of Minn.Stat. § 549.09, subd. 1(c)(2), nor our precedent interpreting it, is dispositive here. Appellant contends that the district court's statutory obligation under Minn.Stat. § 518.58, subd. 1, to divide marital assets in a just and equitable manner requires the district court to exercise discretion and set an equitable interest rate. He contends that this obligation supersedes the mandatory interest rate set by section 549.09, subdivision 1(c)(2). Appellant claims that the 2009 amendment establishing a fixed rate of ten percent, which is much higher than the current market rate, has brought the statute into conflict with this obligation. Thus, he argues that when the district court mechanically awarded respondent interest at a rate of ten percent under the statute, it abdicated its discretion and granted respondent a windfall. We disagree.

Appellant cites *Johnson v. Johnson*, a 1957 Minnesota Supreme Court case, for the proposition that the district court's discretion to divide marital assets "reasonably embraces the fixing of an equitable interest rate where interest is due, and the exercise of that discretion is not controlled by statutory or legal interest rates applicable to other cases." 250 Minn. 282, 292, 84 N.W.2d 249, 256 (1957). In *Johnson*, the district court vacated a marital property award because the husband had fraudulently concealed the value of his assets in the original dissolution proceeding. *Id.* at 284, 84 N.W.2d at 252. Upon retrial, the wife was awarded an additional $29,850.41 in property-division arrears with interest at six percent from the time of the original dissolution decree according to the statuto-

ry rate on any legal indebtedness. *Id.* at 286, 84 N.W.2d at 252–53, 256; *see* Minn. Stat. § 334.01 (1957) ("The interest for any legal indebtedness shall be at the rate of $6 upon $100 for a year, unless a different rate is contracted for in writing. . . ."). The supreme court reversed because six-percent interest exceeded the rate of return the wife was likely to earn in the market over the same time period. *Johnson*, 250 Minn. at 292, 84 N.W.2d at 256.

Appellant contends that *Johnson* mandates that the district court in a dissolution action set interest at the prevailing rate notwithstanding a statutory provision to the contrary. And he distinguishes *Riley* and *Fernandez* because the version of Minn.Stat. § 549.09 we held mandatory in those cases imposed a market rate of interest consistent with *Johnson*'s mandate. Consequently, neither case addressed whether the district court's equitable authority permits or requires it to disregard a higher-than-market rate of statutory interest.

■ We conclude that *Johnson* does not control here. In *Johnson* the underlying action was to dissolve the marriage, an action that inevitably raises a complex array of issues including maintenance, support, custody and a division of assets. The district court presiding over the termination of a marriage must balance a multitude of competing social and economic objectives—such as the parties' ability to maintain a consistent homestead for the children or to meet ongoing child support and maintenance obligations. This analysis demands that a district court have broad discretion in dividing marital assets and accounting for the time value of money. *Cf. Thomas v. Thomas*, 407 N.W.2d 124, 127 (Minn.App.1987) (permitting the withholding of interest on a payment schedule for the distribution of marital

property, but requiring the district court to support its decision with findings).

█ In contrast, the underlying action here is a motion to enforce appellant's due and owing obligations under the dissolution judgment. Deciding the motion did not demand consideration of the equities as it would in an initial property division; that weighing occurred when the district court ratified the parties' MTA and incorporated it into the dissolution judgment. The court here only had to determine that appellant was liable to respondent for a sum of money that he had not paid. When a payee spouse reduces a payor spouse's overdue obligation to a money judgment, the action is akin to a civil action for money where interest "goes with the principal, as the fruit with the tree." *Bourdeaux v. Gilbert Motor Co.*, 220 Minn. 538, 544, 20 N.W.2d 393, 396 (1945).

Moreover, contrary to appellant's assertion that the only purpose of interest is to compensate the creditor for the loss of use of money, the legislative history of the 2009 amendment shows that the legislature intended that a higher interest rate on large judgments would accomplish a variety of noncompensatory policy objectives. Hearing on H.F. No. 1611 Before the H. Pub. Safety Fin. Div. Comm. (Apr. 2, 2009) (discussing the need to encourage prompt payment of judgments, penalize judgment debtors who bring frivolous appeals, and equalize Minnesota's post-judgment interest rate with neighboring states). These objectives apply equally to a default on a property-equalization payment as to any other civil judgment for money.

We thus conclude that in an action to enforce judgments, the district court does not have the discretion to ignore the unambiguous statutory mandate of Minn. Stat. § 549.09, subd. 1(c)(2). A payee spouse is entitled to ten percent interest per year on a money judgment from an overdue marital-property payment from the time it is entered until the time it is paid.

### DECISION

Because the district court correctly concluded that Minn.Stat. § 549.09, subd. 1(c)(2), governs the rate of post-judgment interest on respondent's action to enforce appellant's marital-property-distribution obligations, the district court did not err by setting post-judgment interest at ten percent.

**Affirmed.**