# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A14-1808

AVR Communications, Ltd., et al.,
plaintiffs creditors,
Respondents,

vs.

American Hearing Systems, Inc.,
d/b/a Interton, Inc., defendant debtor,
Appellant.

**Filed August 10, 2015**
**Affirmed**
**Ross, Judge**

Hennepin County District Court
File No. 27-CV-14-8894

Jonathan M. Bye, Bryan Welp, Lindquist & Vennum LLP, Minneapolis, Minnesota (for respondents)

Andrew S. Birrell, Robert W. Vaccaro, Gaskins, Bennett, Birrell, Schupp, LLP, Minneapolis, Minnesota; and

Terrence P. Canade (pro hac vice), Locke Lord LLP, Chicago, Illinois (for appellant)

Considered and decided by Ross, Presiding Judge; Peterson, Judge; and Johnson, Judge.

## S Y L L A B U S

A district court docketing a foreign judgment containing an award denominated in a foreign currency must state the judgment in United States dollars.

# OPINION

**ROSS**, Judge

We must decide whether the district court correctly docketed a foreign judgment. An international dispute between corporations resulted in various judgments in succession: first a judgment in an Israeli court after an Israeli arbitration decision, then the judgment was entered in a United States district court, and then finally the judgment was docketed in the state district court in Hennepin County. The federal court judgment included some amounts denominated in dollars and other amounts in Israeli new shekels. The state district court recalculated the judgment as a single amount denominated in United States currency. It ordered statutory interest to accrue from the entry of the state judgment. The judgment debtor argues on appeal that the state district court erred by denominating the entire judgment amount in United States currency. Because Minnesota law requires the docketed judgment to be denominated in United States currency and the district court correctly interpreted the federal judgment, we affirm.

## FACTS

This is a challenge to the substance of a judgment entered in the state district court. The disputing parties are American Hearing Systems, Inc., a Minnesota hearing-aid producer doing business as Interton, Inc., and an Israeli company, AVR Communications, Inc., and AVR's U.S. subsidiary, Sonovation, Inc. In 2007 AVR and Sonovation initiated an Israeli arbitration proceeding against Interton for breach of contract. After the Israeli courts resolved that the arbitration was proper, the arbitrator concluded in 2011 that Interton had breached the disputed contracts, and he awarded AVR and Sonovation

2

$2,675,000 in damages and 1,000,000 in Israeli new shekels for fees and expenses. An Israeli district court confirmed the award in 2013 and entered judgment.

AVR and Sonovation petitioned the United States District Court in Minnesota to recognize and enforce the judgment under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. *AVR Commc'ns, Ltd. v. Am. Hearing Sys., Inc.*, No. 13-3027, 2014 WL 348248, at *1 (D. Minn. Jan. 31, 2014). The federal district court rejected Interton's attempt to relitigate arbitrability, and it entered judgment based on the arbitrator's 2011 award. The court's amended judgment required Interton to pay:

> . . . $2,675,000 in damages, plus 4% compound annual interest from January 1, 2007 until payment is made and linkage to the Israeli Consumer Price Index from December 11, 2011 until payment is made according to the value of the damages award in Israeli New Shekels on December 11, 2011;
>
> . . . 1,000,000 Israeli New Shekels in fees and costs, plus 4% annual interest and linkage to the Israeli Consumer Price Index from December 11, 2011 until payment is made; and
>
> . . . any Value Added Tax that [AVR and Sonovation] may be required to pay in accordance with Israeli law upon [Interton's] payment of the judgment or any portion thereof.

*AVR Commc'ns, Ltd. v. Am. Hearing Sys., Inc.*, No. CIV. 13-3027, 2014 WL 1775738, at *6 (D. Minn. May 5, 2014). The term "linkage," which is included in both the damages award and the award for fees and costs, is an inflationary adjustment for Israeli new shekels. Unlike a predetermined interest rate, which invariably increases the total payment of the award over time, linkage is calculated retrospectively and is based on actual deflating or inflating shekel values.

After securing the judgment in federal district court, AVR and Sonovation filed to have the judgment docketed in the state district court so they could begin collection proceedings. The state district court first ordered a judgment that followed the federal court's language exactly, including the amounts stated in shekels and the requirement for linkage. The district court administrator informed the judge that the court could enter the judgment only in U.S. dollars. The judge then recalculated the judgment as a single amount stated in U.S. currency ($4,082,254) by relying on an accounting affidavit provided by AVR and Sonovation. That amount includes the sum of the original damages award plus linkage of $99,943 and 4% interest for the period from December 11, 2011, (the date specified in the original judgment as the beginning of the linkage and interest period) to June 17, 2014 (the date that AVR and Sonovation submitted their accounting affidavit). The amended judgment indicates that costs and interest will accrue prospectively, implicitly in amounts determined under Minnesota law, and so it does not include the original 4% interest rate or any future linkage on the $4,082,254 amount.

Interton appeals.

## ISSUES

I.  Did the district court err by converting the judgment from Israeli new shekels into U.S. dollars?

II. Did the district court misinterpret the federal judgment by adding linkage to judgment amounts denominated in U.S. dollars?

III. Did the district court err by imposing Minnesota's statutory postjudgment interest rate?

**ANALYSIS**

Interton argues that the state district court made three errors when it docketed the federal judgment. It contends that Minnesota law prohibits the district court from docketing a foreign judgment in U.S. dollars when the foreign judgment was stated in foreign currency. It also argues that the district court substantively modified the federal judgment by including linkage in the dollar-denominated damages award. And it contends that the award is not subject to statutory postjudgment interest. We address each argument.

**I**

Interton's first argument fails. The relevant statutes inform us that the district court did not err by converting the judgment from Israeli new shekels to U.S. dollars rather than waiting until Interton eventually satisfies the judgment to calculate the exchange rate. The district court used the extant exchange rate to convert fees and expenses from 1,137,641 in Israeli new shekels to $328,893 and to convert a value added tax of 204,775 Israeli new shekels to $59,201. Interton does not offer any alternative conversion amounts; it maintains instead that the operative statutes prohibit the district court from converting the amounts from new shekels to dollars.

Interton's argument requires us to resolve a statutory conflict. Minnesota Statutes section 548.46 provides conflicting directives on whether the district court should convert awards denominated in foreign currency to U.S. currency. Paragraph (a) states that "a judgment or award on a foreign-money claim must be stated in an amount of the money of the claim." Minn. Stat. § 548.46(a) (2014). By contrast, paragraph (g) reads, "On a

5

foreign-money claim, the judgment must be docketed in United States dollars." *Id.* (g) (2014).

These statutes became conflicting in 2005. Before then, in 1991, the legislature adopted the recommended language of section 7, paragraph (a), of the Uniform Foreign-Money Claims Act, § 7, 13, pt. II U.L.A. 27 (1989), codifying the language as paragraph (a) of section 548.46. *See* 1991 Minn. Laws ch. 156, § 7, at 333–34. The language of that paragraph remains unchanged today. The section also included paragraph (h), which likewise followed the model language and stated that a "judgment must be docketed and indexed in foreign money in the same manner . . . as other judgments." *Id.* at 334. The conflict began in 2005 when the legislature changed one of the paragraphs without changing the other. It changed paragraph (h) by renumbering it as paragraph (g) and substituting the requirement that the "judgment must be docketed and indexed in foreign money" with the current language requiring that "the judgment must be docketed in United States dollars." 2005 Minn. Laws ch. 14, § 2, at 172. For reasons that are not apparent to us, the legislature failed also to change the language in paragraph (a), rendering paragraphs (a) and (g) of section 548.46 irreconcilable.

The legislature anticipates that it might occasionally enact laws that are irreconcilable with previous laws, and it provides various methods to resolve the resulting conflicts. Minn. Stat. § 645.26 (2014). Two of those methods apply here, and both lead to the same conclusion. When the irreconcilably conflicting provisions are in different clauses of the same statute, "the clause last in order of . . . position shall prevail." *Id.*, subd 2. Similarly, when the irreconcilably conflicting provisions were "passed at

6

different sessions of the legislature," the one passed latest shall prevail. *Id*., subd. 4. The clause that requires docketing in U.S. currency (paragraph (g)) is both later in position and later in time than the clause that requires docketing in foreign currency (paragraph (a)). Applying the controlling provision here, paragraph (g) therefore overrides the contrary instructions in paragraph (a), so that the judgment on AVR's shekels-denominated award must be docketed in U.S. dollars.

Interton makes three arguments maintaining that we should not follow the plain-language of section 548.46(g). None is convincing.

Interton first argues that section 548.46(g) is an "anomaly" and that the legislature could not have intended for paragraph (g) to repeal substantial parts of Minnesota's Uniform Foreign-Money Claims Act without expressly declaring this intention. Interton is correct that paragraph (g) is an anomaly; it is irreconcilable with paragraph (a) and all irreconcilable statutory provisions are anomalies. But these occur, as the legislature anticipated they would, and the last-enacted rule resolves the anomalous irreconcilability. We also reject Interton's true-intent-of-the-legislature argument for additional reasons. The argument asks us to look past the language to seek the real intention or spirit of the legislation. But we do not look beyond the language of a plainly stated law in pursuit of its supposed spirit if the law is unambiguous. *See* Minn. Stat. § 645.16 (2014). Paragraph (g) is unambiguous, so after determining that it prevails over the formerly enacted paragraph (a), we look no further for meaning. Interton's true-intent-of-the-legislature argument also is belied by the legislative history. The proponents of paragraph (g) explained the 2005 amendments to section 548.46 expressly as "provid[ing] that all

7

foreign judgments be paid in United States dollars." S.B. Summary for S.F. 1210 (Feb. 24, 2005). And the house promoters of the bill left even less room for Interton's legislative-intent argument: "If a party has a judgment on a foreign money claim (money from another country), current law allows the party to choose between getting paid in U.S. dollars or the foreign currency. The bill provides for payment only in U.S. dollars." H. Research B. Summary for H.F. 1295 (Mar. 9, 2005). We reject Interton's legislative-intent argument.

Interton next argues that other statutory provisions conflict with paragraph (g). It particularly cites section 548.46(b), which states, "A judgment or award on a foreign-money claim is payable" using the amount of U.S. dollars necessary to "purchase that foreign money on the conversion date." Minn. Stat. § 548.46(b) (2014). The "conversion date" is "the banking day next preceding the date on which money" is paid to a claimant. Minn. Stat. § 548.40(3) (2014). Interton suggests that this provision implies that foreign-money judgments can be docketed as foreign-money judgments rather than docketed as U.S. currency judgments. The assumption is wrong. By its terms, paragraph (b) directs how foreign-money judgments can be *paid* (in U.S. currency), not how foreign-money judgments must be *docketed*. There is no apparent conflict: the provision in paragraph (b) accounts for the fact that, even after the docketing requirement of paragraph (g) would go into effect after the 2005 amendments, all *previously docketed* foreign-money judgments would still exist and be payable. In short, paragraph (b) directs how to treat foreign-money judgments that have already been docketed and paragraph (g) directs how to treat foreign-money judgments that have not yet been docketed. The history of paragraph (b)

8

bears this out. Before 2005, paragraph (b) had declared, "A judgment or award on a foreign-money claim is payable in that *foreign money or . . . [in] United States dollars . . . .*", but after 2005, it has specified, "A judgment or award on a foreign-money claim is payable *in . . . United States dollars . . . .*" *Compare* Minn. Stat. § 548.46(b) (2004), *with* 2005 Minn. Laws ch. 14, § 2, at 171. In summary, in 2005 the legislature stopped allowing for both the payment of a foreign judgment in foreign currency and the docketing of a foreign judgment in foreign currency. No implied conflict separates paragraphs (b) and (g).

We are also not moved from our reasoning by Interton's reliance on *Matson v. Matson*, 333 N.W.2d 862, 867–68 (Minn. 1983). *Matson* holds that "a foreign judgment cannot be collaterally attacked on the merits." 333 N.W.2d at 867. Interton argues that the district court essentially collaterally attacked the federal judgment when it entered judgment in a form that differed from the federal judgment, which it says violates the Uniform Enforcement of Foreign Judgments Act, Minn. Stat. §§ 548.26–.33 (2014). But the district court here did not attempt to correct a substantive error in the federal judgment. Interton offers no alternative amount to indicate that the amount due on the state judgment imprecisely reflects the value of the federal judgment as of the date that the state district court calculated the judgment based on the controlling exchange rate. The district court merely interpreted the judgment to align it with Minnesota law, which neither *Matson* nor the act forbids. We understand that the shekel happened to be relatively strong against the dollar at the time of docketing and that Interton would prefer to leave the judgment in shekels to allow for a more favorable exchange rate later,

9

potentially, depending on later economic conditions. But nothing in the statute invites the district court to consider the economic effect of the conversion. It was bound to follow the statute, and it did so. The district court did not err by converting the shekels-denominated part of the award into dollars before docketing the foreign judgment.

## II

Interton argues that the district court erred by applying linkage to the dollar-denominated damages award. The argument requires that we interpret the federal judgment language, which states, in relevant part, that Interton must pay AVR and Sonovation "$2,675,000 in damages, plus 4% compound annual interest from January 1, 2007 until payment is made and linkage to the Israeli Consumer Price Index from December 11, 2011 until payment is made according to the value of the damages award in Israeli New Shekels on December 11, 2011." We find no precedent directing our standard of review of the district court's interpretation of a disputed federal judgment. And the parties have not substantially briefed the issue. But we do not decide whether we should review the district court's decision as if it rests on a question of fact, leaving us to give some deference to the district court's interpretation, or whether we should instead treat the interpretation as a question of law that we consider de novo. This is because whether our review is deferential or de novo, the result is the same; we agree with the district court that it was required to apply linkage to the dollar-denominated damages award.

The judgment language is cumbersome but not too complicated to construe. To compute the linkage that must be calculated on "the value of the damages award in Israeli

10

New Shekels on December 11, 2011," one must first determine the amount of the damages award with interest as of December 11, 2011, next convert that total amount into Israeli new shekels based on the value as of that date's currency exchange rate, and then apply linkage to that amount for the period from December 11 until payment is made. This seems to us to be the most straightforward interpretation of the federal court's language. Interton does not suggest any other way to interpret the language. It asserts only that linkage should not be available for damages that the prior judgment expressed in dollars. It essentially advocates that we strike most of the text from that term of the judgment so that it simply assigns "$2,675,000 in damages, plus 4% compound annual interest from January 1, 2007 until payment is made." Striking language is not interpreting language. We cannot ignore the federal court's specific inclusion of "linkage" in its damages description because we do not assume that it intended any of the judgment language to be superfluous. And the parties specifically litigated before the federal court the appropriateness of the provisions in the Israeli judgment before that court entered the federal judgment.

Interton argues reasonably that linkage should be available only if the damages award was actually (rather than just hypothetically) converted into shekels. The argument has some logical appeal because linkage to the Israeli consumer price index addresses the declining purchasing power of the shekel, not the dollar. Interton's formulation would allow AVR and Sonovation to convert the accrued damages award as of December 11, 2011, ($3,247,210) into shekels based on the December 11, 2011 exchange rate. AVR and Sonovation would then be entitled to receive that shekel-denominated amount plus

11

4% compound interest and linkage from December 11, 2011, until payment is made. Under this arrangement, if Interton elected to pay in dollars, the parties could convert the accrued shekel-denominated award back into dollars at the payment date's exchange rate. Linkage under these circumstances would account for devaluation of the damages award only as it remained denominated in shekels.

In addition to being plausible, it appears that this valuation might have been the federal district court's intended result. That court stated in its memorandum that linkage should apply only if interest on the damages award accrues in shekels. *AVR*, 2014 WL 1775738, at *3. And interest could accrue in shekels only if the principal was denominated in shekels. But this consideration does not appear in the express order of the federal district court, and the state district court was interpreting and docketing the federal judgment as it was expressly ordered, not as it might have been otherwise intended. *See Matson*, 333 N.W.2d at 868 (holding that "an error or irregularity in the law or facts of the foreign judgment, in the absence of" jurisdictional or due process issues or fraud, "does not constitute grounds on which a court of the enforcing state may reopen and modify the foreign judgment"). The state district court did not, and we will not, refashion the judgment to conform to the prejudgment statements of the federal district court. The parties had a full opportunity to litigate the language of the federal judgment in federal court, and it was not for the state district court to revisit any lost federal-court opportunities or to resolve issues that the parties left unresolved.

## III

Interton contends that the state district court erred by applying Minnesota's statutory postjudgment interest rate to the amount set out in the Minnesota docketed judgment. This raises a question of statutory interpretation, which we review de novo. *Reider v. Anoka-Hennepin Sch. Dist. No. 11*, 728 N.W.2d 246, 249 (Minn. 2007).

The problem, as Interton presents it, is that the Minnesota interest rate exceeds the rate stated in the arbitration award. The federal court judgment mirrors the arbitrator's original award and imposes 4% interest on the awards for damages and for fees and costs. When the state district court docketed the federal judgment after converting the foreign-money amounts to U.S. currency, it did not impose a 4% interest rate but instead subjected the Minnesota judgment to Minnesota postjudgment statutory interest. And the interest rate in this case will be 10% annually because the award exceeds $50,000. 2015 Minn. Laws ch. 30, art. 1, § 12, at 14 (amending Minn. Stat. § 549.09, subd. 1(c)(2) without altering the general rule).

Interton maintains that the state district court was bound to include only the 4% interest rate as stated in the foreign judgment. It provides no textual response to the statutory language, which plainly requires that Minnesota's interest rate "appl[ies] to foreign judgments filed pursuant to" Minnesota's Uniform Enforcement of Foreign Judgment Act. Minn. Stat. § 548.27. The judgment here was filed pursuant to the act. And even if Interton had prevailed on its contention that the judgment should not have been converted to U.S. dollars, still "[a] judgment or award on a foreign-money claim bears interest at the rate applicable to judgments of this state." Minn. Stat. § 548.48(c)

13

(2014). These statutes afford no exception for state docketed judgments that arose from foreign judgments that were already assigned an interest rate by the foreign jurisdiction. The district court here applied the foreign interest rate and linkage that accrued before the state docketing to determine the amount then due, and then it applied the statutory interest rate to that total amount in U.S. dollars going forward. This approach tracks the statutory requirement. We therefore hold that the district court did not misapply the statute.

Interton raises a fairness argument, maintaining that the judgment creditors AVR and Sonovation will receive a windfall under the statutory rate. This position overlooks the fact that individual sovereign states and nations can and do apply different measures to encourage the satisfaction of judgments and protect judgment creditors in their respective jurisdictions from the cost of delayed payment. Postjudgment interest is intended as a "payment of a reasonable sum for the loss of the use of money to which [a judgment creditor] has been entitled since the time the verdict was rendered." *McCormack v. Hankscraft Co.*, 281 Minn. 571, 573, 161 N.W.2d 523, 524 (1968). Among other things, it also "encourage[s] prompt payment of judgments [and] penalize[s] judgment debtors who bring frivolous appeals." *Redleaf v. Redleaf*, 807 N.W.2d 731, 735 (Minn. App. 2011). The Israeli judgment included an interest rate that was presumably designed to achieve the same result—prompt payment. Interest rightly accrued under that Israeli rate while the Israeli judgment went unpaid, and it continued to accrue until the judgment was docketed in Minnesota. The Minnesota docketing resulted in an interest (and linkage) calculation to determine the accrued amount that Interton then

14

owed based on the Israeli 4% interest rate. Going forward, however, with the obligation to pay the Minnesota judgment filed in a Minnesota court now resting on Minnesota law, the district court implicitly recognized that the Minnesota legislature reasonably imposes its own postjudgment interest rate. The legislature certainly could have chosen a different policy—perhaps one that defers to the interest rate stated in the foreign judgment. But it did not. Interton can of course avoid Minnesota's postjudgment interest altogether by promptly paying the judgment amount. So even if we could disregard the express statutory language to avoid unfairness, we would have no reason to do so here.

## DECISION

The state district court correctly applied state law when it entered judgment in a dollar-denominated amount and specified that interest after the judgment would accrue at the statutory rate. The district court also accurately interpreted the federal judgment and applied linkage to the damages award.

**Affirmed.**